Joseph Todd Eric BROWN, Plaintiff,

v.

CITY OF CLEWISTON and Luis
Perez, Defendants.

No. 83–8065–Civ.

United States District Court,
S.D. Florida.

Sept. 30, 1986.

John Cecilian, Paxton, Crow, Bragg & Austin, P.A., West Palm Beach, Fla., for defendants.

Michael Nugent, Cone, Wagner, Nugent & Johnson, P.A., West Palm Beach, Fla., for plaintiff.

ORDER DENYING JUDGMENT ON THE PLEADINGS AND TREATING MOTION AS MOTION FOR SUMMARY JUDGMENT AFTER NOTICE TO ALL PARTIES; GRANTING SUMMARY JUDGMENT WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW

PAINE, District Judge.

This cause is before the Court for consideration of the motion for judgment on the pleadings filed by defendant CITY OF CLEWISTON (D.E. # 66), pursuant to Rules 12(c) and 12(h)(2) of the Federal Rules of Civil Procedure. The defendant CITY claims that the plaintiff has failed to state a claim upon which relief can be granted for liability under the Civil Rights Act of 1871, 42 U.S.C. § 1983 and for common law negligence and assault and battery.

I

The plaintiff's claim in the case at bar arises out of an incident which occurred on June 18, 1979. The plaintiff, JOSEPH BROWN, then age fifteen, alleges that defendant LUIS PEREZ, a police officer employed by the CITY OF CLEWISTON, negligently and carelessly discharged his firearm, severely injuring BROWN when BROWN attempted to flee from imminent arrest after committing a burglary. He states that excessive force was used despite the fact that he was unarmed at the time, was not an immediate threat to any other person in the vicinity, and that Officer PEREZ knew his name and place of residence. This § 1983 action, including two (2) state claims for negligence and assault and battery, was filed against these two defendants on the basis of alleged deprivations of Constitutional rights secured to the plaintiff by the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution.

The essential allegations against the CITY, as set forth in the plaintiff's amended complaint (D.E. 35) are: (1) That defendant LUIS PEREZ was a police officer and agent/employee of the CITY at the time this incident occurred; (2) That the defendant PEREZ was acting under color of state law or ordinance or standard operating procedure of the CITY; (3) That PEREZ, acting within the course and scope of his employment as an agent of the CITY, acted wantonly, willfully and/or with gross negligence in discharging a firearm at the minor plaintiff; (4) That the plaintiff was injured; (These allegations are contained in Count I of the complaint, for violations of 42 U.S.C. § 1983, and were incorporated by reference in Count II and Count III); (5) That the CITY "negligently and carelessly failed to instruct or supervise" PEREZ inasmuch as PEREZ "was attempting to arrest the Plaintiff at the time of the shooting and used a greater degree of force than was necessary in making or preserving the arrest." (As alleged in Count II and Count III); and (6) In conjunction with his claim for assault and battery, the plaintiff alleges that the defendant PEREZ acted intentionally, as opposed to negligently.

Before addressing the specific issues raised herein, we feel it necessary to discuss an apparent paradox: The plaintiff alleges in two counts of the amended complaint that PEREZ acted negligently. In Count III, he alleges that PEREZ acted intentionally. He does not plead these claims in the alternative. He asks that both defendants be found liable on all three counts despite this inconsistency in theories.

On its face, it appears that the plaintiff is, in common parlance, trying "to have his

cake and eat it too" (a cliche whose significance is often lost on those of us who believe that that is what cake is for). Given our liberal pleading requirements, we will allow the inconsistent allegations to stand; we will not, for instance, grant judgment on the pleadings on Count III (for intentional assault and battery) on the grounds that the plaintiff's allegations of negligence belie alleged intentional wrongful conduct. In other words, we will "let [him] eat cake".

## II

The determination of whether allegations in a complaint set forth a claim cognizable by the Court is essentially one of law. *Zamora v. Columbia Broadcasting System,* 480 F.Supp. 199 (S.D.Fla.1979). Judgment on the pleadings is a proper motion for raising a defense of failure to state a claim upon which relief can be granted. Fed.R.Civ.Pr. 12(h)(2); *See,* 5 Wright & Miller, *Federal Practice and Procedure,* Civil § 1367.

Generally, for purposes of a motion for judgment on the pleadings, all factual allegations in the complaint are taken as true; the motion can only be sustained if the complaining party can prove no set of facts in support of his claim which would entitle him to relief. *Cash v. C.I.R.,* 580 F.2d 152 (5th Cir.1978). In ruling on the motion for judgment on the pleadings, we may only consider the pleadings themselves.

Since motions for judgment on the pleadings are concerned with a determination of the substantive merits of a controversy, such motions can only be granted if no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law. *See, generally,* 5 Wright & Miller, *Federal Practice and Procedure,* Civil §§ 1367–1369.

In the instant case, the CITY's answer raises issues of fact which preclude us from granting a motion for judgment on the pleadings. *See, Parker v. DeKalb Chrysler Plymouth,* 459 F.Supp. 184,

(N.D.Ga.1978), *aff'd.,* 673 F.2d 1178 (5th Cir.1982). We may, however, treat this motion as a motion for summary judgment and consider matters outside the pleadings, provided each party has a reasonable opportunity to present all material pertinent to such a motion. Fed.R.Civ.Pr. 12(c).

On Friday, June 13, 1986, this Court authorized its law clerk, to communicate with the attorneys for the respective parties by telephone. During the conference call held on that date, the attorneys were informed that the Court was inclined to treat the motion for judgment on the pleadings as a motion for summary judgment, and requested each attorney to file any additional material he would have the Court consider in connection with such a motion. Counsel for the plaintiff, Mr. Nugent, stated that he would file some material (in addition to that which is already of record) within the week. Mr. Cicilian, counsel for both defendants, stated that he objected to the material plaintiff would be filing but that he had no additional material for the Court's consideration.

In accordance with that conference call, the plaintiff filed a number of exhibits in opposition to the motion for judgment on the pleadings/for summary judgment and an objection to the Court's action (D.E. 99). The defendant CITY filed an objection to the plaintiff's exhibits (D.E. 103). For the record, these objections are overruled.

## III

### FINDINGS OF FACT

The plaintiff and the CITY have stipulated to the following facts:[1] On June 18, 1979, Officer LUIS PEREZ was a police officer employed by the defendant CITY. PEREZ was within the vicinity of Concordia Avenue in the City of Clewiston and was observing an apartment located at 834 Concordia Avenue. PEREZ was acting within the course and scope of his employment at that time and during the course of subsequent events.

---

1. Throughout this Order, the plaintiff will be referred to as "the plaintiff" of "BROWN."

As PEREZ watched, Plaintiff BROWN went to the back of the apartment at 834 Concordia Avenue, broke the glass in a window there, and crawled into the apartment. BROWN entered the apartment with the intent to steal a stereo and/or other property. Thereafter, BROWN exited the apartment and returned to a car which was parked nearby. Three (3) of his friends awaited him there.

Officer PEREZ approached the parked vehicle, announced that he was a police officer and told BROWN that he was under arrest. At the time, PEREZ knew who the plaintiff was, knew that he was a juvenile and knew his address. BROWN knew PEREZ was a police officer and that he (PEREZ) was attempting to place the plaintiff under arrest.

After PEREZ told the plaintiff that he was under arrest, BROWN attempted to escape by fleeing. Officer PEREZ discharged his firearm, hitting the plaintiff in the leg, in order to prevent his (BROWN's) escape. (All of the foregoing facts are stipulated to in the pretrial stipulation, D.E. 59).

The following facts, although not stipulated to, are uncontroverted: BROWN committed a felony, to wit: Burglary. BROWN was unarmed at the time he was shot and was not a threat to PEREZ or any other person. Officer PEREZ was not in fear of death or bodily harm at the time he shot BROWN.

From the depositions and exhibits submitted to the Court by the plaintiff, BROWN, we find the following facts to be undisputed by either party: In 1977 or 1978, then-Chief of Police Wilbur Miller promulgated certain rules and regulations for the Clewiston police officers (Deposition of Wilbur Miller, D.E. 100, pp. 7–8, 29–32, Deposition of Raynola Stiles, D.E. 32, pp. 52–53). That original manual included rules and regulations concerning the use of deadly force (D.E. 100, p. 8). Officers of the Clewiston police department were required to sign for a copy of these rules, and were told that they must follow the rules in the manual (D.E. 100, pp. 8, 10, 23, 39).

The rules and regulations provided, in section 3.43 (*See*, D.E. 75, Plaintiff's Notice of Filing Exhibits), as follows:

Firearms and Weapons:

Authorized Uses: A member shall not draw or display his firearm except for a legal use or official inspection. A Member should never draw his firearm unless he plans to and is ready to use it. When it is necessary to use a firearm, it shall be fired for effect, not to wound or warn. A member may discharge his firearm in connection with the performance of his official police duty, for the following reasons or circumstances.

. . . .

c. To defend himself from death or serious injury.

d. To defend another person, unlawfully attacked, from death or serious injury *when other means have failed.* (emphasis theirs)

e. To apprehend—when all other means have failed—a fleeing felon whom the officer reasonably believes has (1) committed a violent crime to the person of another or (2) a crime against property that clearly demonstrates a wanton and reckless disregard for human life.[2]

. . . .

The last paragraph of this section provides that,

The police officer shall exert no more force than is reasonably necessary to apprehend the fleeing felon, and shall use deadly force only as a *last resort* and only in those instances described under "Authorized Use" above. (emphasis theirs).

In addition to urging police officers to follow these rules and regulations, former Chief Miller made such comments as, "Don't be playing cowboys out there, you know. Don't take your gun out unless you

---

**2.** Chief Miller testified that he believed the words "reckless and wanton disregard for hu- man life" referred to a crime such as arson. (D.E. 100, p. 42).

need it; don't fire it unless it's absolutely necessary." (D.E. 100, pp. 23, 36–37, 39–40). It was Chief Miller's opinion that the department policy was more restrictive than the state statute (D.E. 100, p. 39) (referring to Florida's "Fleeing Felon" Statute, Fla.Stat. § 776.05 (1979)), although, upon further questioning, he did say that the regulations and the statute closely paralleled one another (D.E. 100, pp. 92–93). The plaintiff submitted no other evidence regarding the CITY's policy on deadly force.

In the absence of any evidence to the contrary, we find that the CITY's official policy regarding the use of deadly force was set forth in the police department rules and regulations enumerated herein. We have compared the regulations with the state statute in effect in 1979 and find that the departmental regulations were much narrower than the Florida Fleeing Felon statute. In shooting the plaintiff, PEREZ acted in violation of the departmental regulations, which only authorized the use of deadly force as "a last resort" and even then, only in cases where the officer was in danger of death or bodily harm or the fleeing felon posed a threat to others. However, as we have previously found (D.E. 107, Order Granting PEREZ' Motion for Summary Judgment), the shooting of the plaintiff was justified under the Florida statutes then in effect. Thus, the shooting policy of the CITY, as set forth in its police department regulations, was *not* the same standard as provided by state law, but was much more restrictive.

## IV

### CONCLUSIONS OF LAW

We have subject matter jurisdiction of this cause pursuant to 28 U.S.C. § 1331 and § 1343. We may, in our discretion, exercise pendant jurisdiction over the state tort claims asserted in the amended complaint and hereby elect to do so.

All parties have had adequate notice regarding the treatment of the motion for judgment on the pleadings as a motion for summary judgment. The attorneys for both parties were informed that they could submit materials in support of/in opposition to such a motion, and the plaintiff did submit such materials (*See, e.g.,* D.E. 98, 100, 101 and 102). In determining whether judgment should be entered in favor of the CITY, we have considered all of the material submitted.

In converting the motion for judgment on the pleadings to a motion for summary judgment, the question is no longer whether the allegations of the complaint are sufficient to support a cause of action against the defendant CITY; rather, the question is whether there exists any genuine issue of material fact which remains to be tried and whether the defendant is entitled to judgment as a matter of law. Fed.R. Civ.Pr. 56(c). Once the movant has supported his/her motion for summary judgment, the burden shifts to the party opposing summary judgment, who must come forward with significant probative evidence demonstrating that a triable issue of fact does exist. *American Viking Contractors, Inc. v. Scribner Equipment Company,* 745 F.2d 1365 (11th Cir.1984).

It has recently been held, too, that a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, after discovery, and on which that party will bear the burden of proof at trial, may be challenged by summary judgment to show that a triable issue of fact does exist as to that essential element. *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In that case, it was stated that where there is a complete failure of proof as to an essential element of plaintiff's cause of action, summary judgment is mandated because this failure renders all other facts immaterial. *Id.* at ——, 106 S.Ct. at 2553.

In the case at bar, there exists no genuine issue of material fact which remains to be decided. We make this finding after determining that the majority of the relevant facts are undisputed. To the extent that any fact is in dispute, we find that that

fact (e.g. The existence of an unconstitutional policy) is an essential element of plaintiff's claim on which there has been a complete failure of proof after three (3) years of discovery. Thus, all the remaining issues are issues of law.

*Civil Rights claim pursuant to 42 U.S.C. § 1983*

It appears from the record in this cause that the plaintiff is seeking recovery against the CITY under 42 U.S.C. § 1983 on three (3) theories of liability: *Respondeat superior*, negligent supervision and training and/or the existence of an unconstitutional policy or custom. The last of these three theories is the only grounds for liability actually alleged in the amended complaint (*See*, D.E. 35). The other two theories of liability were not alleged in the amended complaint, however, they are asserted by implication in various memoranda filed in this cause.

(a) *Respondeat Superior*

■ In his amended complaint, the plaintiff alleged that codefendant PEREZ, acting under color of state statute or ordinance, standard operating procedures, customs, usages or policies of the CITY OF CLEWISTON, wantonly, willfully and recklessly discharged a firearm at the plaintiff while purporting to effect an arrest of the plaintiff. It is alleged that PEREZ was acting within the scope and course of his employment at the time the shooting occurred. In several memoranda filed herein, the plaintiff alludes to the CITY's liability based on PEREZ's acts committed pursuant to the Florida Fleeing Statute, Fla.Stat. § 776.05 (1979) (as opposed to any ordinance or custom of the CITY). To the extent that the plaintiff seeks to hold the CITY liable for PEREZ's acts committed pursuant to state statute, he has failed to state a claim under § 1983 and summary judgment should be granted in favor of the CITY.

Since Congress only intended to impose liability on those "who, under color of [law] subjects or causes to be subjected any ... person ... to the deprivation of any rights ... secured by the Constitution and [the] laws [of the United States]....", 42 U.S.C. § 1983, supervisors and employers cannot be held liable in the absence of some affirmative causal connection. Thus, it was decided in *Monell v. Department of Social Services of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that a municipality would not be held liable solely because an employee of the municipality was a tortfeasor. *Id.* at 691, 98 S.Ct. at 2036. There must be some degree of "fault" or affirmative causation on the part of the municipality, such as: (1) An official policy or custom of the employer which encouraged or approved constitutional misconduct; *Id.* (*See, Also, Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)); (2) Actual participation in the misconduct; *See, McLaughlin v. City of LaGrange*, 662 F.2d 1385 (11th Cir.1982) (police chief not liable for actions of subordinates unless there was some personal involvement) and *Baskin v. Parker*, 602 F.2d 1205 (5th Cir.1979) (sheriff liable if there was some degree of participation); or, (3) where, despite the supervisor/employer's knowledge of unconstitutional conduct, he failed to restrain, acquiesces in, or ratifies unconstitutional acts. *Cook v. City of Miami*, 464 F.Supp. 737 (S.D.Fla.1979); *Craig v. Carson*, 449 F.Supp. 385 (M.D.Fla. 1978).

Accordingly, the plaintiff can not predicate § 1983 liability on a *respondeat superior* theory. Unless the plaintiff shows that an unconstitutional custom or policy existed and that he was injured as a result of that policy, the defendant must prevail as a matter of law.

(b) *Negligent Supervision and Training*

The plaintiff's second theory of liability rests on the premise that Officer PEREZ—and other officers—were negligently trained and/or supervised. The question thus presented is whether negligence on the part of an employer in supervising or training police personnel provides the affirmative link necessary for § 1983 liability. The answer is no.

In *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the Court deter-

mined that an official's failure to act, even in the face of a statistical pattern of constitutional misconduct, does not render that official liable under § 1983. *Id.* at 375, 96 S.Ct. at 606. The authorities must play an affirmative part in depriving the complainant of his constitutional rights in order to be held liable. *Id.* at 377, 96 S.Ct. at 607. Thus, "a general allegation of administrative negligence fails to state a claim cognizable under § 1983." *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981).

 Following the *Rizzo* decision, several courts rejected 1983 claims which were premised on a theory of negligent training and supervision. *See, McLaughlin v. City of LaGrange,* 662 F.2d 1385 (11th Cir. 1981); *Kite v. Kelley,* 546 F.2d 334 (10th Cir.1976); and *Hays v. Jefferson County, Ky.,* 668 F.2d 869 (6th Cir.1982). In one case substantially similar to the case at bar, *Gilmere v. City of Atlanta,* 737 F.2d 894 (11th Cir.1984), it was held that, even if a city police department had been grossly negligent in training its police officers who shot and killed the arrestee, the City could not be liable under § 1983. Neither gross negligence nor deliberate indifference are the proper tests for adjudging a § 1983 claim against a municipality.[3] The test is whether the City promulgated an unconstitutional policy or custom having the force of law which was the moving force of the constitutional violation. *Id.* at 901. There is no allegation—and, what is more to the point, no evidence—that the City had a custom or policy having the force of law to train or supervise its police officers improperly (*See,* Our discussion regarding an unconstitutional policy, *infra* ). Accordingly, the defendant must prevail on this negligence theory.

(c) *Unconstitutional Policy or Custom*

As the foregoing authorities illustrate, the plaintiff must allege the existence of an unconstitutional policy or custom promulgated by the CITY, which caused the constitutional deprivation, in order to state a claim against the CITY. *See, City of Oklahoma v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) and *Gilmere v. City of Atlanta,* 737 F.2d 894 (11th Cir. 1984), *On appeal after remand,* 774 F.2d 1495 (11th Cir.1985). Failure to allege the existence of such a policy would be fatal to the plaintiff's cause of action. Consequently, it is an essential element of plaintiff's civil rights claim. If the plaintiff fails to produce any evidence to support his contention that an unconstitutional policy promulgated by the CITY was the moving force of the constitutional violation, then we must enter summary judgment in favor of the CITY. *Celotex Corp. v. Catrett,* —— U.S. at ——, 106 S.Ct. at 2553.

Basically, the plaintiff is contending that the CITY had an unconstitutional policy or custom regarding the use of deadly force. One could infer from the record before us that the plaintiff also contends that the CITY maintained an unconstitutional policy of improperly training and/or supervising police officers, although that argument has never been specifically raised. In order to allow the plaintiff every opportunity to present a viable claim, we will discuss that second alleged policy as if it had, in fact, been raised by the plaintiff.

In *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), the Supreme Court held that a police officer may use deadly force to prevent the escape of a fleeing felon if the felon poses a threat of serious physical harm to the officer or others. *Id.* at 11, 105 S.Ct. at 1701. Deadly force may *not* be used where the felony suspect poses no immediate threat of serious harm to the officer or others. *Id.* This constitutional rule is to be applied

---

**3.** On a later appeal, the Eleventh Circuit sitting *en Banc* criticized the panel's decision, and stated that there is some substantial disagreement as to whether gross negligence can suffice to establish municipal liability. *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1504 (11th Cir.1985) (*en Banc* ). *See, e.g., Languirand v. Hayden,* 717 F.2d 220 (5th Cir.1983) (City's failure to train police officer may render City liable if such failure to train constituted gross negligence amounting to conscious indifference).

retrospectively insofar as the liability of municipalities is concerned. *Acoff v. Abston*, 762 F.2d 1543, 1549 (11th Cir.1985). Accordingly, to support his contention that the CITY promulgated an unconstitutional policy or custom regarding the use of deadly force, the plaintiff must demonstrate that the alleged custom or policy sanctioned the use of deadly force outside the parameters of *Garner.*

Generally, "custom" consists of those practices of municipal officials that are so permanent and well-settled as to have the force of law. *Monell v. Department of Social Services of New York*, 436 U.S. at 691, 98 S.Ct. at 2036. *Accord, Gilmere v. City of Atlanta*, 737 F.2d at 901. In order to hold the CITY liable on the basis of an alleged custom, the plaintiff must show that the custom was "created by city 'lawmakers or those whose edicts or acts may fairly be said to represent official policy.'" *Gilmere*, at 902, *citing Monell v. Department of Social Services*, 436 U.S. at 694, 98 S.Ct. at 2037–38.

Evidence submitted by the plaintiff to show the existence of an unconstitutional policy or custom promulgated by the CITY consists of the following: The City of Clewiston's Police Department Rules and Regulations concerning the use of deadly force (D.E. 75); Testimony of former Chief-of-Police, Wilbur Miller (D.E. 100); and a number of documents including incident reports of police misconduct and a grand jury investigation report (D.E. 98).

■ The department rules and regulations may be said to represent official policy since they were promulgated by the Chief of Police and officers were told that they must follow them (*See,* Findings of Fact, *supra,* at pp. 6–8). Thus, the departmental rules and regulations are evidence of the CITY's official policy or custom regarding the use of deadly force. The operative provisions of the department rules and regulations are set forth in the Findings of Fact, *supra.* Essentially, they provide that deadly force may only be used by a police officer to (1) defend himself from serious injury; (2) to defend others from

death or serious injury when other means have failed; and (3) to apprehend a fleeing felon when all other means have failed and where the officer reasonably believes that the felon has committed a violent crime toward a person or a crime against property demonstrating a wanton and reckless disregard for human life. In any case, deadly force was only authorized as a last resort. Former Chief Miller testified that officers were told that they must follow these rules (D.E. 100, pp. 23, 36–37, 39), and that he told officers that they should not fire their weapons "unless absolutely necessary." (D.E. 100, p. 23). This official policy, as it existed in 1979, was within the constitutional limits later enunciated in *Garner.* Therefore, the CITY's policy regarding the use of deadly force was not unconstitutional. Officer PEREZ was not acting pursuant to CITY custom or policy when he shot BROWN.

In an attempt to defeat summary judgment, the plaintiff points to various incident reports of police misconduct as creating an inference that a custom or policy regarding the use of excessive force (other than that memorialized in the department rules and regulations) existed in 1979. The majority of these incident reports concern minor misconduct of Clewiston police officers, such as verbal abuse of citizens and insubordination (D.E. 98). In most cases, an internal investigation was conducted by the department and the officer was reprimanded. In addition, a large number of these alleged incidents occurred after the incident at issue in this case, and thus are irrelevant to show the existence of an official policy in 1979.

What is more to the point is that the shooting of plaintiff BROWN was the only incident of deadly force used by a Clewiston police officer. (Miller deposition, D.E. 100, pp. 31–32; Deposition of Raynola Stiles, D.E. 32 p. 17–18). One witness did describe an incident where two juveniles were beaten while in the custody of Clewiston police officers (Deposition of Janice Campbell, D.E. 101, pp. 10, 26–43, 74). However, this witness could not recall

whether the incident occurred in 1978, 1979, or 1980. Assuming that it did occur during the relevant time period, that was the only incident of excessive force which that witness could specifically recall. We note, parenthetically, that excessive force, although reprehensible, is not "deadly force".[4]

■ After reviewing all of the exhibits submitted, we find that the plaintiff has completely failed to demonstrate the existence of an unconstitutional policy or custom promulgated by the CITY. At best, the shooting of plaintiff BROWN was an isolated incident of deadly force. At worst, it is one of two established incidents of excessive force neither of which (taken together or alone) is sufficient to establish a custom of excessive force.[5]

The plaintiff has also failed to establish a custom of improperly training or supervising police personnel. The CITY was very careful of only hiring officers who had completed the requirements for state certification (D.E. 100, p. 71 and 88). Police Academy instruction regarding the use of deadly force was included. (See, Deposition of LUIS PEREZ, D.E. 102, pp. 49–51). There is no fact in this record from which a jury could conclude that the CITY maintained a custom of improperly training its officers.[6]

Based on all of the foregoing, we find that the plaintiff has completely failed to demonstrate an essential element of his

4. The plaintiff also filed a grand jury investigation report from 1982 wherein the Grand Jury of Hendry County found evidence of, *inter alia,* a pattern of physical abuse toward citizens. This report is largely irrelevant to our discussion, since the grand jury investigation only concerned personnel employed by the Clewiston Police Department in 1982 (when Chief Miller had already left).

Of special note, however, is an alleged investigation of the Clewiston Police department conducted by the State Attorney's Office of the Ninth Judicial Circuit in late 1978–early 1979. The findings of the State Attorney's investigation were published in the *Clewiston News* on March 7, 1979 (a sworn transcription of which was submitted by Raynola Stiles, D.E. 98). The original letter to Governor Graham, dated February 9, 1979, stated, in part, that

claim under 42 U.S.C. § 1983, and/or has failed to demonstrate that there exists a genuine issue of material fact regarding the existence of an unconstitutional policy or custom. Therefore, judgment should be entered in favor of the defendant CITY on this claim.

*Plaintiff's state common-law claims*

(a) Negligence

■ This claim is predicated on the alleged negligent instruction and supervision of officer PEREZ regarding the use of deadly force when making an arrest. It is axiomatic that, in order to show negligence, the plaintiff must first demonstrate that the defendant breached a duty of care owed to the plaintiff.

The standard of care owed by the CITY to the plaintiff must be determined with reference to Fla.Stat. § 776.05 (1979), which governed the use of deadly force by police officers. In civil suits against municipalities, it is the statewide standard which is controlling. *City of St. Petersburg v. Reed,* 330 So.2d 256 (Fla. 2d DCA 1976). The Clewiston Police Department Rules and Regulations do not determine the standard of care insofar as this state claim is concerned. Those rules are only relevant to determine whether PEREZ received proper instruction in the use of deadly force within the allowable parameters of Fla.Stat. § 776.05 (1979).

"Our investigation further covered allegations of excessive force on the part of officers of the Clewiston Police Department. Most of these complaints had already been investigated by the Federal Bureau of Investigation and no evidence was obtained to support criminal charges. Our independent investigation brought us to the same conclusion.
/s/ Robert Eagan,"
The state attorney's investigation was initiated at the request of the City Council of the City of Clewiston (D.E. 98).

5. *See, e.g., Gilmere,* at 904 (single incident of police misconduct insufficient to establish custom or unconstitutional policy); and *City of Oklahoma City v. Tuttle, supra.*

6. Same as footnote 5, above. Same reasoning applies to alleged custom of negligent training.

In 1979, when officer PEREZ shot the plaintiff, Fla.Stat. § 776.05 permitted a law enforcement officer to use any force "necessarily committed in arresting felons fleeing from justice." (*See*, Order Granting Perez' Motion for Summary Judgment, D.E. 107, 644 F.Supp. 1417, and cases cited therein at page 1420). Under state law in effect at the time, the City was only required to instruct Officer PEREZ and other Officers in accordance with the state standard on deadly force. The fact that the CITY had more stringent requirements regarding the use of deadly force—which PEREZ violated when he shot the plaintiff—is evidence of the fact that the CITY did not violate the standard of care imposed by statute.

Prior to his employment with the CITY, PEREZ worked as a police officer in Puerto Rico for eleven (11) years (Perez Deposition, D.E. 102, p. 41). While working for the CITY, PEREZ attended a police academy in Ft. Myers and completed the necessary courses for state certification (D.E. 102, pp. 47–48). He was instructed in the use of deadly force in accordance with the state statute (D.E. 102, pp. 49–51). Former Chief Miller stated that the CITY only hired officers who had been certified by the state (D.E. 100, pp. 71 and 88).

When PEREZ shot the plaintiff, he did not violate the state statute (*See*, Order Granting Perez' Motion for Summary Judgment, D.E. 107). Since the CITY only had a duty to instruct and train its officers to act in conformity with the state statute, it did not breach any standard of care owed to the community in general or this plaintiff in particular. All the evidence submitted shows that the CITY instructed its officers to obey stricter requirements than those imposed by the statute.[7] Accordingly, judgment should be entered in favor of the defendant CITY.

(b) Assault and Battery

■ The same reasoning which applied to plaintiff's claim for negligence applies to this claim as well: The statewide standard for the use of deadly force is controlling. *St. Petersburg v. Reed, supra.* There is no evidence that either PEREZ or the CITY violated the state standard imposed by Fla. Stat. § 776.05 (1979) (*See*, D.E. 107). More importantly, the CITY did not authorize the use of deadly force in instances such as the one involved in this case. Since the CITY neither authorized nor later ratified PEREZ's acts, the CITY can not be held liable for an assault and battery committed by its agent PEREZ. Accordingly, judgment must be entered in favor of the CITY.

In view of the foregoing, it is hereby ORDERED and ADJUDGED as follows:

1. The CITY's motion for judgment on the pleadings (D.E. 66) is Denied on the grounds that material outside the pleadings was submitted therewith;

2. That after giving due consideration to the submissions of the parties, including the legal issues raised therein, the Court determined that the motion for judgment on the pleadings should be treated as a motion for summary judgment;

3. That the Court gave sufficient notice to all parties regarding its intentions and allowed all parties to submit any further material they would have the Court consider in connection with a motion for summary judgment;

4. That summary judgment is Granted in favor of the defendant CITY. The Clerk of this Court is hereby directed to enter judgment in favor of the CITY in accordance herewith;

5. Upon review of the record herein, it appears that no further issues remain to be decided and that the Clerk should close the district court file of this cause;

6. Since neither party is entitled to recover either the costs of this action or attorney's fees, the final judgment shall direct each party to bear their own costs and attorney's fees.

---

7. There was testimony that at least one police officer—Raynola Stiles—had never received any instruction on the use of deadly force (D.E. 32, pp. 4–8), however this same officer was never assigned to patrol the streets, either (D.E. 32, p. 55, 60–61).