Lamar **MATTHEWS**, as Administrator for the Estate of Larry James Matthews, Plaintiff,

v.

**CITY OF ATLANTA**, a municipal corporation, and Sgt. R.H. Coleman, Individually and in his capacity as Police Officer for the City of Atlanta, Defendants.

Civ. A. No. 1:87–CV–0026–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 19, 1988.

Charles W. Boyle, Moran & Boyle, Atlanta, Ga., for plaintiff.

Marva Jones Brooks, W. Roy Mays, III, Office of Atlanta City Atty., Atlanta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This matter is before the court on defendants' motion for summary judgment, Fed.R.Civ.P. 56; plaintiff's motion for leave to amend his complaint or in the alternative to dismiss without prejudice, Fed.R.Civ.P. 15, 41; defendants' motion for protective order, Fed.R.Civ.P. 26; and plaintiff's motion to strike, Fed.R.Civ.P. 12.

## I. STATEMENT OF FACTS.

Plaintiff Lamar Matthews brings this action as administrator of the estate of Larry James Matthews (hereinafter referred to as "decedent"). Complaint, ¶ 5. Defendant R.H. Coleman is a police officer employed by the defendant City of Atlanta. *Id.*, ¶ 7. The defendant City of Atlanta is a municipal corporation of the State of Georgia. *Id.*, ¶ 6. The court's jurisdiction is premised upon the federal question presented by plaintiff's constitutional claims brought pursuant to 42 USC §§ 1981, 1983 and 1988. *Id.*, ¶ 1.

This action arose out of the following series of events. On the morning of June 30, 1986, defendant Coleman was having coffee in a southwest Atlanta restaurant when he was approached by an individual named Alvin Smith.[1] Mr. Smith informed defendant Coleman that a truck previously stolen from his employer was parked in the restaurant's parking lot and occupied by two men, one of whom was the decedent. Complaint, ¶¶ 8–9; Brief at 1. On the basis of this information, defendant Coleman left the restaurant and proceeded to approach the truck in question. Complaint, ¶ 9; Brief at 1. While approaching the truck, defendant Coleman removed his revolver from its holster. Complaint, ¶ 10; Brief at 1. Upon reaching the truck, defendant Coleman ordered decedent, who was at that time occupying the driver's seat of the stolen truck, to disengage the engine. *Id.* Then, placing his weapon at or near decedent's head, defendant Coleman ordered both men to exit from the truck. *Id.*

Despite defendant Coleman's order, decedent failed to disengage the truck's engine. Plaintiff asserts that decedent requested permission first to place the truck in its parking gear. Complaint, ¶ 11. Defendant Coleman then reached into the truck in an effort to disengage its engine himself. *Id.;* Brief at 1. At this point, the truck lurched forward, striking either defendant Coleman's hand or his weapon. The weapon

---

1. Mr. Smith is not a party to this action.

fired one round which struck decedent in the head, fatally wounding him. The present lawsuit followed.

## II. DISCUSSION

### A. *Defendant Coleman.*

#### 1. Plaintiff's Alternative Motions.

As noted above, plaintiff has filed alternative motions for leave to amend or for voluntary dismissal. As to the former motion, plaintiff seeks leave of court to amend his complaint to assert a state law negligence claim against defendant Coleman. Defendant Coleman opposes plaintiff's proposed amendment on the grounds that plaintiff's motion comes after the filing of summary judgment motions and after the close of discovery.

 Fed.R.Civ.P. 15 provides that a party seeking to amend his complaint more than twenty days after service must seek leave of the court or written consent of the adverse party. The rule also states that "leave shall be freely given when justice so requires." Although the decision whether to grant leave is within the discretion of the district court, the rule contemplates that leave shall be granted unless there is a substantial reason to deny it. *Halliburton and Associates, Inc. v. Henderson, Few and Company*, 774 F.2d 441, 443 (11th Cir.1985); *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir.1984). Permission may be denied where leave would cause undue delay or prejudice to the opposing party, where prior amendments have failed to cure deficiencies, or if the motive of the amendment is dilatory. *Halliburton and Associates* at 443–44; *Espey* at 750.

 In the case at bar, the court is mindful that the allowance of plaintiff's proposed amended complaint would not be without some prejudice to defendant Coleman. The court does not believe, however, this warrants the denial of plaintiff's motion. First, it appears that the omission of the negligence claim from the original complaint may have been due to mere oversight. Plaintiff's original complaint provides,

This complaint also sets forth certain causes of action arising under the Constitution and laws of the State of Georgia, which are based upon the same facts giving rise to the federal causes of action contained in this complaint. This court's pendent jurisdiction gives it power to determine these causes of action.

Complaint, ¶ 4. *See also id.*, ¶ 1 ("Plaintiffs [sic] further invoke the pendent jurisdiction of this court to hear and decide claims arising under state law"). Second, the court believes the allegations of plaintiff's original complaint provide defendant Coleman with adequate notice of the conduct upon which plaintiff's negligence claim is based. Indeed, the allegations of paragraphs 10 through 14 are the same allegations plaintiff relies upon to support the proposed negligence claim. Finally, plaintiff's proposed negligence claim clearly arises from the same conduct and occurrence as his § 1983 claim against defendant Coleman. For these reasons, and because of the liberal treatment generally afforded such motions, plaintiff's motion for leave to amend is GRANTED and his alternative motion for leave to dismiss without prejudice is DENIED.

#### 2. Defendant Coleman's Motion for Summary Judgment.

Before turning to the merits of defendant Coleman's motion for summary judgment, the court will set forth the standard controlling practice under Fed.R.Civ.P. 56. Courts should grant motions for summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the initial burden of asserting the basis for his motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This burden may be discharged by merely "showing— that is, pointing out to the district court— that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554. The non-moving party must then "go beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue

for trial." *Id.* at 324, 106 S.Ct. at 2553. Thus, to survive defendant Coleman's motion for summary judgment, plaintiff must come forward with specific evidence of every element essential to his case so as to create a genuine issue for trial. *Id.* at 323, 106 S.Ct. at 2553.

The two essential elements to a claim under § 1983 are (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that this conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981). Thus, where defendant Coleman has met his initial burden under Rule 56, plaintiff can only defeat his motion by identifying and presenting evidence of both elements of his section 1983 claims.

### (a) The First and Fifth Amendment Claims.

It is clear from the court's reading of plaintiff's response to defendants' motion for summary judgment that any claims brought pursuant to the first and fifth amendments have been abandoned. In any event, it is clear that neither claim was maintainable in the first instance. First, no allegation of the complaint supports any claim of a first amendment violation. Second, because the undisputed facts show defendant Coleman to be a state, and not a federal, agent, plaintiff's fifth amendment claim is similarly unfounded. *See Metz v. McKinney,* 583 F.Supp. 683, 688 n. 4 (S.D. Ga.1984), *aff'd,* 747 F.2d 709 (11th Cir. 1984); *Patterson v. Fuller,* 654 F.Supp. 418, 421 (N.D.Ga.1987). For these reasons, defendant Coleman's motion for summary judgment as to plaintiff's first and fifth amendment claims is GRANTED.

### (b) The Substantive Due Process Claim.

In the case at bar, there is no dispute that defendant Coleman was acting under color of state law when the shooting occurred. He was on duty, in full uniform and in the process of arresting plaintiff's decedent and his companion when the shot was fired. It is equally clear, however, that despite its tragic nature, the shooting of plaintiff's decedent does not rise to the level of a substantive due process violation.

In *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) and *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), the Supreme Court reexamined the state of mind requirement for a due process claim brought pursuant to § 1983. Both cases involved an alleged liberty deprivation, and in both the Court held that mere negligence does not "deprive" an individual of his life, liberty or property as the term is used in the fourteenth amendment. In *Daniels,* the Court pointed out that the due process clause was intended "to prevent governmental power from being used for purposes of oppression" and concluded that "due process is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property (emphasis in original)." *Daniels,* 474 U.S. at 329, 332, 106 S.Ct. at 664, 665. Similarly, in *Davidson,* decided the same day as *Daniels,* the Court held that notwithstanding the seriousness of the injury inflicted, "where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." *Davidson,* 474 U.S. at 348–49, 106 S.Ct. at 670–71. *See also Dunster v. Metropolitan Dade County,* 791 F.2d 1516, 1518 (11th Cir.1986); *Burch v. Apalachee County Mental Health Services,* 804 F.2d 1549, 1555–56 (11th Cir.1986); *Patterson v. Fuller,* 654 F.Supp. 418, 421–22. For the reasons set forth below, the court finds *Daniels* and *Davidson* dispositive of plaintiff's substantive due process claim.

The uncontroverted evidence of record indicates that defendant Coleman unintentionally discharged his weapon when the truck operated by plaintiff's decedent unexpectedly lurched forward causing contact with the truck's door and the officer's hand or weapon. Plaintiff does not dispute this finding nor does he allege that defendant

Coleman was grossly negligent[2] or reckless in his conduct. The court therefore finds that plaintiff has failed to identify and produce evidence suggesting that the shooting was any more than a negligent act. Accordingly, defendant Coleman's motion for summary judgment as to plaintiff's substantive due process claim is GRANTED as well.

### (c) The Fourth Amendment Claim.

■ Plaintiff has also asserted a claim against defendant Coleman for illegal seizure under the fourth amendment. While it has long been recognized that an unconstitutional seizure gives rise to a private cause of action under § 1983, *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the court believes that the facts of this case—though undeniably tragic—are insufficient to invoke the protections of the fourth amendment.

This case does not present the question of whether there should be some remedy if the death of plaintiff's decedent was caused by any negligence on the part of defendant Coleman. Rather, the question presented is whether the Constitution of the United States provides such a remedy. As previously noted, it is clear beyond question that the due process clause of the fourteenth amendment does not. The plaintiff's case, therefore, pleads in the alternative that the decedent was denied a right assured under the fourth amendment to the Constitution in that he was unreasonably seized when he was killed.

The strength of plaintiff's argument crests on the decision in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), but it thereafter ebbs, leaving him short of a beachhead. In that case a unanimous Court found that the police shooting of a nonviolent fleeing felon was a seizure. Plaintiff here finds an analogy: Decedent was being arrested. Decedent was shot. Therefore, he was seized. There exists a critical difference, however. In *Garner*, the shooting was a volitional act. Here it was not and, according to the court's understanding of the word "seizure," it carries with it a very definite connotation of something or someone being put under the control of another as a result of acts intentionally taken. The court is mindful that it may not be necessary that the officer intended to arrest or seize someone. It is often said that his state of mind does not control. *See Scott v. United States*, 436 U.S. 128, 137–38, 98 S.Ct. 1717, 1723–24, 56 L.Ed.2d 168 (1977); *United States v. Robinson*, 414 U.S. 218, 236, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973). But in all of these cases the officer intended the act that ended his subject's freedom of movement. Here, because there is no evidence that the officer intended to shoot the plaintiff's decedent or that he did so volitionally, the shooting does not constitute a seizure within the meaning of the fourth amendment. In fact, the decedent had already been seized prior to the shooting incident; i.e., when the officer drew his gun and ordered plaintiff's decedent and his companion to exit the truck.[3]

Even should the court find that the shooting constitutes a seizure, it could hold that it was not unreasonable within the meaning of the fourth amendment. This seizure was not effected maliciously or sadistically to further governmental oppression or for the purpose of causing harm. It does not shock the conscience or even appeal to the conscience so much as it causes the same feeling of sadness and regret that we feel whenever we hear of an accidental death. It does not speak to the regulation of the sovereign so much as it shows that even sovereigns are fallible. As it does not address due process concerns, it does not address any threat against which the fourth amendment was

---

**2.** In his response to defendants' motion for summary judgment, plaintiff notes that he has sought leave of court to amend his complaint to add claims of "gross negligence and negligence under common law tort standards...." Response at 12. This is not correct. Plaintiff's proposed amended complaint only serves to add a pendent state law claim for simple negligence against defendant Coleman.

**3.** This seizure was on probable cause and is not attacked by plaintiff.

erected and thus cannot be considered unreasonable in the constitutional sense.

Because it was not a volitional act of one acting under color of law, there is no need to reach the stage of balancing the rights of the state against those of the individual as required by *Gilmere v. City of Atlanta*, 774 F.2d 1495 (11th Cir.1985) (en banc). An unthinking progression from *Garner* to *Gilmere* would lead, in cases like the one at bar, to *per se* liability of the officer. If the officer is truthful in an accidental shooting, he will acknowledge that (1) there was no need to use deadly force, (2) it was disproportionate to the need (3) the injury inflicted was very grave, and (4) it was not needed in good faith to maintain order. Therefore, a balancing of constitutional concerns would almost invariably lead to a finding against an officer in accidental shooting cases.

The factors of constitutional analysis, taken from *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.1973) or those of *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), are all addressed at determining if a government should be authorized to act as it was charged. In accident cases, governmental license is never an issue. The *Garner* to *Gilmere* process could produce some rather unexpected results. The court reads from time to time of aircraft piloted by government servants crashing into houses. It is not frivolous to suggest that if this approach were followed there might now be available an action under § 1983 or a constitutional tort in such cases for an illegal entry under the fourth amendment. Moreover, what of citizens who are "seized" when killed in traffic mishaps involving governmental employees?

In reaching the conclusion that it does, the court believes itself to be in accord with the holding after reargument in *Dodd v. City of Norwich*, 827 F.2d 1 (2d Cir.1987). It finds further support for this view that there is substantial congruity between what violates substantive due process with what is unreasonable under the fourth

amendment from *Jamieson v. Shaw*, 772 F.2d 1205, 1210 (5th Cir.1985), where that court relied on balancing tests on the fourth amendment claim which were first articulated in substantive due process cases.

The court is aware of two cases involving non-volitional shootings that produce contrary results. *Patterson v. Fuller*, 654 F.Supp. 418 (N.D.Ga.1987); *LeBer v. Smith*, 773 F.2d 101 (6th Cir.1985). In both cases the officers slipped while holding a gun on the decedent. In both cases the courts without explanation focused on whether the officer acted reasonably in drawing his weapon in the first instance and this led the courts into the balancing analysis. In both cases, however, it appears that plaintiffs sought recovery for the firing of the gun—not the drawing of it. Both acts are seizures and, under the proper facts, both could be actionable; but that is not the issue. The logical extension of this position is that if the officer acted reasonably in pointing the gun, then its subsequent discharge was reasonable without evidence of the need for the actual use of deadly force. There may also be a corollary and that is that an officer should never draw a gun unless he would be justified in using it. The practical effect of such a rule would be that officers would not be prepared to defend themselves and others against the unexpected and/or until they actually see a weapon in the hands of a foe. Police officers are not constitutionally required to place themselves in this position. For the reasons set forth above, the court finds that the record does not support plaintiff's fourth amendment claim. Accordingly, defendant Coleman's motion for summary judgment is GRANTED *in toto*.

### B. *Defendant City.*

1. Defendant City's Motion for Summary Judgment.[4]

■ As is well known by now, local governments and governmental entities

---

**4.** In light of the court's rulings on defendant Coleman's motion for summary judgment, the granting of the defendant city's motion may

well be academic. *See City of Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986). Because of the unsure application

may be the targets of § 1983 actions where official policy or governmental custom is responsible for a deprivation of rights protected by the Constitution. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Similarly, if the alleged constitutional deprivation took place pursuant to the instructions of a final or authorized decisionmaker, *Monell's* "municipal policy" requirement is met and the municipal defendant may be held accountable. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Once the plaintiff proves the existence of such a policy, however, his burden is only partially carried. Causation must also be established; i.e., it must be shown that the municipal policy was "the moving force of the constitutional violation." *Polk v. County of Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981). "At the very least, there must be an affirmative link between the policy and the particular constitutional violation alleged." *Tuttle,* 471 U.S. at 824–25 n. 8, 105 S.Ct. at 2436–37 n. 8. Thus, in order to survive a municipal defendant's motion for summary judgment, the plaintiff must identify and produce direct evidence of (1) the existence of some policy, custom or practice (2) attributable to the municipality (3) that was the "moving force" behind (4) a constitutional injury. *Id.*

In regard to plaintiff's theory of municipal liability, the complaint provides that defendant Coleman's actions "resulted from and were taken pursuant to a de facto policy of [the defendant city] ... to use deadly force to apprehend those persons alleged to be involved in the commission of a crime." Complaint, ¶ 15. Moreover, it is alleged that the supervisory and policy-making officials of the defendant city have had actual knowledge of this "illegal poli-cy" "for a substantial period of time," *id.,* ¶ 16, and that despite these officials' knowledge of this "illegal policy," they have proceeded under the additional "policies" of authorizing the use of deadly force; failing to correct the illegal use of force; failing to discipline officers for the illegal use of force; and ineffectively training officers in the proper use of force. Finally, it is alleged that these policy-making officials have exhibited deliberate indifference to the illegal use of force. *Id.* Despite the foregoing, the court's reading of plaintiff's response to the defendant city's motion for summary judgment indicates that plaintiff has abandoned all of the above-described policy theories of municipal liability except that of "inadequate training." *See* Response at 4–11.

In regard to the inadequate training theory of municipal liability, it should first be noted that the Supreme Court has not had occasion to determine whether such a "policy" meets the requirements of *Monell.* Nevertheless, any discussion of this theory of municipal liability properly begins with the Supreme Court's plurality opinion in *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). In *Tuttle,* the Supreme Court granted certiorari to determine whether a single isolated incident of the use of excessive force by a police officer establishes an official policy sufficient to render a municipality liable for damages under § 1983. As in the case at bar, the respondent in *Tuttle* premised her municipal liability theory on a policy of inadequate training. Though the Court chose not to decide the issue, it openly questioned whether such a policy could ever satisfy the requirements of *Monell.* The Court described the inadequate training policy as "nebulous" and "a good deal ... removed from the constitutional violation" and noted that it failed to meet the general definition of the term "policy." *Tuttle,* 471 U.S. at 823,[5] 105 S.Ct. at 2436.

of the *Heller* opinion to the particular theory of municipal liability in this case, however, the court will consider the defendant city's motion on its merits.

5. "In the first place, the word 'policy' generally implies a course of action consciously chosen from among various alternatives; it is therefore difficult in one sense to accept the submission that someone pursues a 'policy' of 'inadequate training,' unless evidence is adduced which proves that the inadequacies resulted from a conscious choice—that is, proof that the policy-

The Court went on to hold that where an alleged policy—such as that of inadequate training—is not itself unconstitutional, evidence in addition to the single incident in question would be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the "policy" and the constitutional deprivation. *Id.* at 824, 105 S.Ct. at 2436–37. Finally, with regard to causation, the court remarked that a § 1983 plaintiff does not carry his burden by merely showing that the alleged inadequacies in the municipality's training program *might* have led to the constitutional injury. Rather, "there must at least be evidence of an affirmative link between the training inadequacies alleged and the particular constitutional violation at issue." *Id.* at 824 n. 8, 105 S.Ct. at 2436 n. 8.

Like the Supreme Court, the Eleventh Circuit Court of Appeals has not had occasion to determine whether a policy of inadequate training can support municipal liability. Where confronted with such a policy theory, however, the Eleventh Circuit has made several compelling observations. In *Gilmere v. City of Atlanta*, 774 F.2d 1495 (11th Cir.1985) (en banc), the court rejected the plaintiff's inadequate training theory of municipal liability on the grounds that the evidence suggested only that "the city failed to train one single policeman properly in the appropriate methods of avoiding the use of deadly force." *Gilmere* at 1504. The court noted further that even if it viewed the officer's inadequate training as the "moving force" behind the plaintiff's constitutional injury for the purposes of municipal liability,[6] it would still be incumbent upon the plaintiff to demonstrate through competent evidence that the officer's training "resulted from a custom that was so permanent and well settled as to have the force of law." *Id.*

One year later, in *Cannon v. Taylor*, 782 F.2d 947 (11th Cir.1986), the court again declined to impose liability on a municipal defendant on an inadequate training theory, finding that the plaintiff had failed to show the training program at issue to be so inherently inadequate as to transgress constitutional boundaries; i.e., to exceed simple negligence. *Cannon* at 951. In so doing, the *Cannon* court noted, "it is clear ... that at least a showing of gross negligence will be necessary to establish liability for inadequate training." *Id.* (citing *Reeves v. City of Jackson*, 608 F.2d 644, 652 (5th Cir.1979). The court went on to cite with approval the Fifth Circuit Court of Appeals decision in *Languirand v. Hayden*, 717 F.2d 220 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984), wherein the court held that a policy of inadequate training would not support municipal liability absent a showing that (1) the policy existed due to the municipality's "gross negligence amounting to conscious indifference" (2) through evidence "at least of a pattern of similar incidents." *Id.* at 951 (quoting *Languirand* at 227–28); *see also Stokes v. Bullins*, 844 F.2d 269, 273 (5th Cir.1983).

More recently, in *Brown v. City of Clewiston*, 644 F.Supp. 1407 (S.D.Fla.), *aff'd*, 848 F.2d 1534 (11th Cir.1988), the court of appeals affirmed the district court's dismissal of the appellant's municipal liability claim finding that the appellant had failed to demonstrate through competent evidence that the alleged inadequacies in the municipal defendant's training program rose to the level of an unconstitutional policy. *Brown* at 1539 n. 7. The court thus took the position that a plaintiff advancing an inadequate training theory of liability does not carry his burden under *Monell* by merely showing that the municipality could have, but did not, take steps to reduce the risk of harm to the plaintiff. *Id.*

The court finds the new Fifth Circuit's opinions in this area equally instructive. In *Palmer v. City of San Antonio*, 810 F.2d 514 (5th Cir.1987), for instance, the Fifth Circuit panel determined that the plaintiff had failed to demonstrate the requisite causation between the alleged policy

---

makers deliberately chose a training program which would prove inadequate." *Id.*

6. Which it could not under *Tuttle*.

and the constitutional injury. In making this determination, the court observed that "an inadequate training program alone is not ordinarily the 'moving force' behind an injured plaintiff's harm, because the police officer who injures the plaintiff does not rely upon inadequate training as tacit approval of his conduct." *Palmer* at 517 (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169 (5th Cir.1985)); *see also Stokes v. Bullins*, 844 F.2d 269, 272 (5th Cir.1988) (plaintiff must show at least a pattern of constitutional violations related to inadequate training).

From the court's reading of the above-cited authorities as well as the decisions of the other circuit courts of appeals, the problems raised by an inadequate training theory of municipal liability are readily apparent. First is the problem of determining the extent of the plaintiff's burden in demonstrating the existence of a "policy" of inadequate training. This is illustrated by the fact that neither the Supreme Court nor the Eleventh Circuit has had occasion to find that such a "policy" has been proven to exist in a particular case. The first problem leads to the second: How does the plaintiff demonstrate that such a policy— once proven—was the legal cause of his constitutional injury? The present case is illustrative: Can plaintiff show that the shooting of his decedent was "caused" by an omission in the defendant city's training program, such as the failure to instruct its officers not to shoot citizens unnecessarily or to be careful while handling a firearm? This causation problem is particularly glaring in light of the large number of possible intervening causes at work at the time of the constitutional injury. Such factors as the disposition of the particular officer(s) whose conduct caused the injury in question, the extent of his experience with sim-

ilar incidents, the actions or inactions of other persons involved and the like are equally likely to contribute or play a predominant part in bringing about a constitutional injury. *See Springfield v. Kibbe*, 480 U.S. 257, 107 S.Ct. 1114, 1120–21, 94 L.Ed.2d 293 (1987) (J. O'Connor dissenting).[7] Similarly, a theory of municipal liability premised upon a policy of inadequate training overlooks significant considerations relating to the particular training of the officer(s) whose conduct caused the injury in question. First, the police officers of a particular municipality do not necessarily all participate in the same training program or subsequent refresher courses. In addition, police officers receive their training in groups rather than on an individual basis. It would therefore follow that a plaintiff advancing such a theory may not be able to show that a particular officer was inadequately trained without also showing that the other officers in his class likewise received inadequate training.[8] *See Gagne v. City of Galveston*, 671 F.Supp. 1130, 1135 (S.D.Tex.1987). These variables, together with the general tenuous nature of the inadequate training theory, increase the always present danger of imposing § 1983 liability on a municipal defendant where there actually exists no causal link between the municipality and the constitutional injury in question other than the municipality's employment of a tortfeasor.

■ With these concerns in mind and based upon the binding and persuasive authorities discussed above, the court submits the following test. A § 1983 plaintiff advancing an inadequate training theory of municipal liability must show through competent evidence: (1) that he suffered a constitutional injury as a result of the conduct

7. In *Kibbe*, the Supreme Court granted certiorari to determine whether a municipality can be liable under § 1983 and *Monell* for the inadequate training of its employees. Before the issue was reached, however, the majority concluded that withdrawal of the writ was necessary for procedural reasons. Justice O'Connor, joined by Justices White and Powell, disagreed, expressing their opinions that the issue was properly before the court and ripe for review.

The dissenting justices then went on to express their views on the issue.

8. While such proof would likely be sufficient to create a jury issue as to whether the officer causing the plaintiff's injury received inadequate training, it would not be "policy" evidence. Proof of one class receiving inadequate training would still be no more than a single instance within the meaning of *Tuttle*.

of an officer(s) employed by or otherwise under the control of the municipality; (2) that the officer(s) causing the constitutional injury was himself inadequately trained; [9] (3) that but for the flaws in the officer(s)' own training, the injury in question would not have occurred; (4) that the officer(s)' received this inadequate training as a result of or due to an actual custom or practice on the part of the municipality of providing its officers with inadequate training; [10] and (5) that this custom or practice exists as a result of or due to gross negligence attributable to the municipality, or alternatively, is known to the municipality's policy-making officials and continues to exist through their reckless disregard or conscious indifference to the rights of the citizens within the municipality's domain.[11] In the absence of evidence of *all* of these elements, the court believes that a plaintiff seeking to impose § 1983 liability on a municipality fails to create an issue of fact as to the existence of a causal connection between his constitutional injury and any municipal "policy" of inadequate training.

 Applying this standard to the case at bar, it is immediately apparent that plaintiff has failed to create an issue of fact as to the existence of a municipal policy causally related to his decedent's death. First, plaintiff presents evidence that defendant Coleman failed to follow departmental procedure in attempting to arrest plaintiff's decedent. This evidence —which defendants do not dispute—is not even competent proof that defendant Coleman himself received inadequate training. Even treating it as such, however, this evidence falls far short of suggesting the existence of a policy of inadequate training and does not relate in any fashion to proof that the existence of any such policy is attributable to the defendant city. Second, plaintiff presents evidence showing that the defendant city recently rejected an opportunity to purchase a "Crisis Simulator," which plaintiff describes as "state of the art equipment" for police training. This evidence is likewise unsupportive of plaintiff's claim. A municipality is not constitutionally obliged to provide its officers with the best training equipment money can buy. Absent a showing that the existing training equipment and facilities are inadequate, a municipality's failure to secure superior equipment and facilities offers no support for any aspect of a § 1983 plaintiff's municipal liability claim.[12] The court therefore concludes that plaintiff has failed to identify and produce evidence of any element necessary to establish his theory of municipal liability. Accordingly, the defendant city's motion for summary judgment is hereby GRANTED.

### 2. The Related Motions.

Plaintiff's motion to strike and defendants' motion for protective order arise out of defendants' reliance upon the affidavit testimony of Major R.A. Davis in support

**9.** Such evidence would include proof that the officer was never instructed in the proper manner of responding to a particular situation or that other officers receiving the same training engaged in the same or similar misconduct.

**10.** Such evidence would necessarily have to prove more than that the particular officer or his class received inadequate training. Proof of policy would require evidence at least of a pattern or practice of similar incidents caused by officers receiving similar training in other classes.

**11.** This burden is not carried merely by evidence that a subordinate official was negligent or grossly negligent in training a particular officer or class of officers.

**12.** Plaintiff also announces his intention "to prove other incidents of inadequate training of police officers at trial," listing several § 1983 cases involving the defendant city. First, it is apparent that plaintiff misunderstands his burden under Rule 56. It is not enough to outline one's trial strategy for the court in response to a properly supported motion for summary judgment. Second, to the extent this list of "other instances" constitutes evidence, it is clearly not evidence properly presented in opposition to a summary judgment motion. *See* Rule 56(c). Finally, of the five cases listed by plaintiff, one is still in the discovery stages (*Ison v. City of Atlanta, et al.,* Civil Action No. 87–CV–2765 (N.D.Ga.)); two did not involve a finding that the defendant city had inadequately trained its police officers (*Gilmere v. City of Atlanta,* 774 F.2d 1495 (11th Cir.1985) and *McQurter v. City of Atlanta,* 572 F.Supp. 1401 (N.D.Ga.1983)) and two are unknown to the court (*Porter v. City of Atlanta* and *Rollins v. City of Atlanta* ).

of an alternative ground for summary judgment and plaintiff's subsequent attempt to depose Major Davis. In light of the court's ruling on the defendant city's motion for summary judgment, however, these related motions are obviously moot and are DENIED as such.

## III. POSTURE OF THE CASE.

In light of the court's rulings on the above-discussed motions, the court now has before it a state law negligence action between two non-diverse parties. The court is satisfied, however, that this action remains within its pendent jurisdiction and further that it relates back to the filing of the original complaint for the purposes of the applicable statute of limitations. *See* Fed.R.Civ.P. 15(c). Nevertheless, the court will allow plaintiff twenty (20) days from receipt of this order in which to move for voluntary dismissal so that this action may be re-filed in the appropriate state court. *See* O.C.G.A. § 9–2–61(a). Should plaintiff decline to file such a motion within this period, the court shall retain the case for trial and the parties' proposed consolidated pretrial order will be due within thirty (30) days thereafter.

## IV. CONCLUSION.

In sum, plaintiff's motion for leave to amend the complaint to add a pendent state law claim for negligence against defendant Coleman is GRANTED. Plaintiff's motion for leave to dismiss and to strike and defendants' motion for protective order are DENIED. Defendant Coleman's motion for summary judgment is GRANTED. The defendant city's motion for summary judgment is likewise GRANTED.

SO ORDERED.