Christopher GLASCO, Plaintiff,

v.

Ronald BALLARD, Defendant.

Civ. A. No. 3:91CV0038.

United States District Court,
E.D. Virginia,
Richmond Division.

July 9, 1991.

---

Sa'Ad El–Amin, Sa'Ad El–Amin & Associates, Richmond, Va., for plaintiff.

David Peter Buehler, Sarah Jane Chittom, John Adrian Gibney, Jr., Shuford, Rubin, Gibney & Dunn, Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on defendant's motion to dismiss or alternatively for summary judgment, and plaintiff's partial cross-motion for summary judgment. The matter has been fully briefed and is ripe for disposition. Jurisdiction is premised on 42 U.S.C. §§ 1983 and 1988.

*Background*

The plaintiff, Christopher Glasco, a twenty-three year old resident of Virginia, has brought this § 1983 action against Ronald Ballard, Deputy Sheriff for Hanover County, for injuries sustained by the plaintiff as a result of his having been shot by Ballard. The uncontradicted circumstances giving rise to this suit occurred during the early evening hours of January 1, 1991. On this evening, Glasco, accompanied by a friend, stopped briefly at a 7–11 store located on Route 54 in Ashland. Upon exiting the store they proceeded, by foot, south on Randolph Street in the direction of the Palm Leaf Motel, where they had been earlier in the evening and were intending to return.

Shortly before 11 p.m., Deputy Ballard, who was in a patrol car, responded to a call by the Ashland police which reported a shoplifting at the 7–11 store on Route 54. A few minutes later, while driving around in his patrol car, the deputy saw two men walking on Randolph Street, one of whom he believed matched the radio dispatcher's description of the shoplifting suspect. He pulled up beside the two men, both of whom had their hands in their pockets. Deputy Ballard noticed that one of the men, Glasco, was wearing a sweater or a jacket with a pocket in the front. In this pocket he observed a shiny, metallic oblong object and a plastic-wrapped object, which he believed to be a can of corned beef and a twinkie.

While still in his patrol car, Deputy Ballard asked the plaintiff what was in his pocket. Glasco made a response which the deputy could not understand. Ballard then began to exit his patrol car and pulled out his gun. However as he stepped out of the car, it rolled forward. He then leaned back into the car, put his foot on the brake and reached toward the gears to put the car in park. As he did so, his firearm accidentally discharged. Glasco was struck in the neck and knocked to the ground.

As a consequence of this injury, Glasco has allegedly sustained serious permanent nerve damage, affecting much of the right side of his body. He now seeks compensation from Deputy Ballard. In his three count Complaint he has alleged two state law actions for gross negligence and assault and battery, as well as a Section 1983 action based on excessive use of force. Defendant Deputy Ballard moved for summary judgment on the federal claim on the grounds that there was no intentional use of force. He has also moved to dismiss the state law claims for lack of pendent jurisdiction.

In response to these motions Glasco made his own motion for summary judgment on the § 1983 action. He alleges that Deputy Ballard's actions, intentional or not, must be judged under an objective standard of reasonableness and that they were unreasonable as a matter of law.

*Discussion*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. In the present matter both parties appear to agree on the essen-

tial factual circumstances of the case.[1] Their disagreement is solely one of law; that is, whether Ballard's unintended act forms the basis of a constitutional tort.

In *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), the Supreme Court considered whether the Fourth Amendment was violated when a police officer fatally shot an unarmed burglary suspect who was attempting to escape. In the course of deciding that shooting the suspect was constitutionally impermissible in the circumstances of that case, the Court observed that, "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Id.* at 7, 105 S.Ct. at 1699. The Court held that deadly force is permissible only if it is necessary to prevent a suspect's escape and if "the office has probable cause to believe that the suspect poses a significant threat of death or serious injurious physical injury to the officer or others." *Id.* at 3, 105 S.Ct. at 1697.

More recently, the Court had another opportunity to discuss the use of excessive force by police officers in the process of arresting a criminal suspect. In *Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), a fleeing suspect was killed when his car crashed into a police roadblock. His heirs, the plaintiffs, claimed the roadblock had been set up intentionally in such a manner as to be likely to kill him. In the course of its decision the Court stated that, "[v]iolation of the Fourth Amendment requires an *intentional acquisition* of physical control." *Id.* (emphasis added). The Court later continued that

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement ... nor even when there is a governmentally caused and governmentally desired termination of an individual's freedom of movement ... but only when there is a governmental termination of movement *through means intentionally applied.*

*Id.* (emphasis added). The Court carefully distinguished in this case between police action directed toward producing a particular result and police action which inadvertently causes that result. The Court gave a particularly instructive example:

> Thus, if a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely that a tort has occurred, but not a violation of the Fourth Amendment. And the situation would not change if the passerby happened by lucky chance, to be a serial murderer for whom there was an outstanding arrest warrant—even if, at the time he was thus pinned, he was in the process of running away from two pursuing constables. It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom movement *through means intentionally applied.*

*Id.* (emphasis in original). The Court concluded that the Fourth Amendment "addresses 'misuse of power,' ... not the accidental effects of otherwise lawful government conduct." *Id.* (citation omitted).

None of these Supreme Court cases actually dealt with an accidental, unintentional injury similar to the one at hand, although a number of circuit courts have had occasion to address this situation. For example, in *Landol–Rivera v. Cruz Cosme*, 906 F.2d 791 (1st Cir.1990), the plaintiff was accidentally shot by police officers who

---

**1.** Deputy Ballard has provided his own version of the events by his sworn affidavit. His statement substantially conforms to the factual allegations of the compaint, as well as the evidence contained in certain documents provided the Court by the plaintiff. Although counsel for the plaintiff contended at the hearing on these motions that a material factual issue existed as to the accidental nature of the shooting, he provided no evidence which contradicted the defendant's version of the events, or which otherwise raised the spectre of a material factual dispute.

were attempting to apprehend a suspect who had taken the plaintiff hostage. The plaintiff alleged that he had been "seized" by the police as a result of having been shot. The First Circuit disagreed. It rejected

> the notion that the 'intention' requirement is met by the deliberateness with which a given action is taken. A police officer's deliberate decision to shoot at a car containing a robber and a hostage *for the purpose of stopping the robber's flight* does not result in the sort of willful detention of the hostage that the Fourth Amendment was designed to govern.

Similarly, the Seventh Circuit found no "seizure," and consequently no Fourth Amendment violation, where a police officer accidentally hit a suspect who was being chased by the officer in his vehicle. *Campbell v. White*, 916 F.2d 421 (7th Cir. 1990). The Court reasoned that a "distinction ... has been made between an accidental or tortious act which happens to be committed by a governmental official and an intentional detention that rises to the level of a constitutional violation." *Id.* at 423. It concluded that a discussion of the reasonableness of the officer's act "would be merely academic." *Id. See also Dodd v. City of Norwich*, 827 F.2d 1 (2d Cir.1987) (burglar's Fourth Amendment rights not violated where he was accidentally shot and killed during struggle initiated by him during handcuffing; shooting was not for purpose of seizing him).

In the Court's opinion, these cases accurately reflect the state of the law. However it should be noted that Glasco reads these cases very differently. He maintains that intent of the state actor is irrelevant and that the sole question in Fourth Amendment excessive force cases is whether the violence was "objectively reasonable." For this proposition he relies on *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In *Graham* the plaintiff, a diabetic, was stopped and handcuffed by a police officer who refused his pleas for sugar. During the encounter the plaintiff also sustained multiple injuries.

The district court—and Court of Appeals for the Fourth Circuit—applied a four-factor test for evaluating plaintiff's claim of excessive use of force, which included whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the purpose of causing harm. The Supreme Court rejected this subjective test, holding instead that all claims of excessive force, deadly or not, in the course of an arrest, investigatory stop, or other "seizure" are properly analyzed under the Fourth Amendment's "objective reasonableness" standard, rather than under a substantive due process standard. *Id.* In the course of so holding, the Court emphasized that "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* at 397.

It is on this language that Glasco primarily relies. Although it is persuasive when read out of context, it is less so when read in full. The plaintiff correctly understands the Supreme Court to suggest that intent is irrelevant but confuses the type of "intent" to which the Court is referring. In criminal law terms, the Court ruled that *specific intent*, or motivation, is not an element of the Fourth Amendment. It made no actual ruling on the issue of *general intent*. In other words, it is irrelevant whether the police officer intended to brutalize a suspect or merely intended to discipline him, but it is still relevant whether the officer intended to perform the underlying violent act at all.

This is, admittedly, a fine distinction which has eluded at least one court which has applied a standard of reasonableness to all police violence, even if wholly accidental. *See Pleasant v. Zamieski*, 895 F.2d 272 (6th Cir.1990). In *Pleasant*, the criminal suspect was accidentally shot when he attempted to evade police by climbing over a fence. As the defendant police officer reached to pull him off the fence, his gun, which had been drawn, accidentally dis-

charged. The Sixth Circuit applied a two part inquiry: first, whether the officer's decision to draw the gun was reasonable, and second, whether his decision not to return his gun to his holster before pursuing the suspect was reasonable. *Id.* at 276. The Court of Appeals read *Graham* to imply that even in cases involving accidental injuries the threshold issue is the "objective reasonableness" of the conduct. This conclusion was drawn, in part, from the statement in *Brower v. County of Inyo,* 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) that

> [i]n determining whether the means that terminates the freedom of movement is the very means that the government intended we cannot draw too fine a line, or we will be driven to say that one is not seized who has been stopped by the accidental discharge of a gun with which he was meant only to be bludgeoned.

*Id.* at 598–99, 109 S.Ct. at 1382.

When read in context, however, this statement is, in the Court's opinion, less on point than the Sixth Circuit implies. Earlier in the *Brower* opinion, as noted previously, the Supreme Court clearly states that a "seizure" occurs only where there has been governmental termination of freedom of movement "through means intentionally applied." *Id.* at 597, 109 S.Ct. at 1381.

■ In conclusion, a more appropriate understanding of the case law, as well as the history of the Fourth Amendment, suggests that a wholly accidental shooting is not a "seizure" within the meaning of the Fourth Amendment. As the Second Circuit has noted,

> [i]t makes little sense to apply a standard of reasonableness to an accident. If such a standard were applied, it could result in a fourth amendment violation based on simple negligence. The fourth amendment, however, only protects individuals against "unreasonable" searches

and seizures, not seizures conducted in a "negligent" manner.

*Dodd v. City of Norwich,* 827 F.2d 1 (2d Cir.1987); *accord Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (section 1983 "imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law").

■ Having said all this, there is some indication in the record that Glasco seeks alternatively to assert his excessive force claim on a substantive due process theory. As previously noted, in *Graham v. Connor, supra,* the Supreme Court held that all claims of excessive force in the context of an arrest or other seizure should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a substantive due process standard. In the opinion of the Court this decision would seem to imply that even in cases where the force applied does not rise to the level of a seizure, if undertaken in the context of an investigatory stop, a Fourth Amendment analysis is the only recourse. In short, the Fourth Amendment analysis forecloses a due process analysis. *But see Landol–Rivera v. Cruz Cosme,* 906 F.2d 791 (1st Cir.1990) (suggesting that residual substantive due process analysis might be available); *Pleasant v. Zamieski,* 895 F.2d 272, 276 n. 2 (6th Cir.1990).

*Conclusion*

■ In conclusion, Deputy Ballard is entitled to summary judgment in his favor on the Section 1983 claim. Moreover because this Court no longer has pendent jurisdiction, he is also entitled to judgment in his favor on his motion to dismiss the remaining state law claims. Glasco's motion for summary judgment will, accordingly, be denied.