**Paul R. TROUBLEFIELD, Plaintiff,**

**v.**

**CITY OF HARRISBURG, BUREAU OF POLICE, and Officer Dave Salada, Defendants.**

Civ. A. No. 1:CV–92–0096.

United States District Court, M.D. Pennsylvania.

April 8, 1992.

---

**161**

MEMORANDUM

RAMBO, District Judge.

Before the court is the motion to dismiss of defendants City of Harrisburg Bureau of Police and Officer Dave Salada. The motion has been fully briefed, and is now ripe for disposition.

*Background*

Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The standard for dismissal under Rule 12(b)(6) is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The court must " 'take all well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff,' and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township,* 838 F.2d 663, 665–66 (3d Cir.1988) (quoting *Estate of Bailey by Oare v. County of York,* 768 F.2d 503, 506 (3d Cir.1985)), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). "Because 12(b)(6) results in a determination on the merits at an early ... stage ..., the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn." *Mortensen v. First Fed. Savings and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). As a § 1983 civil rights claim is involved here, the plaintiff must, however, infuse his complaint with "a modicum of factual specificity" over and above what would be required for other claims, "identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs." *Colburn,* 838 F.2d at 666.

Therefore, the court will take every allegation pleaded in Mr. Troublefield's complaint as true. According to the complaint, defendant Salada, a Harrisburg city police officer, was dispatched to the vicinity of

Peter B. Foster, Eric J. Wiener, Brian J. Puhala, Sr., Handler & Wiener, Harrisburg, Pa., for plaintiff.

Frank J. Lavery, Jr., Marshall, Dennehey, Warner, Coleman & Goggin, Harrisburg, Pa., for defendants.

North Sixth Street in the mid-afternoon of November 8, 1989 in response to a call about a possible car theft. Salada found plaintiff in the front seat of a car. Pistol drawn, Salada asked Troublefield if he owned the car. Troublefield, who was intoxicated, answered "No. I guess you got me."

Salada ordered plaintiff to climb out of the car and lie on the ground. Troublefield complied without protest or struggle, extending himself prostrate, facing the ground. Pistol still drawn, the officer began to search the suspect, and then proceeded to apply handcuffs. As he locked on the handcuffs, Salada started to return his weapon to his holster. Suddenly, the weapon fired, propelling a bullet into Troublefield's leg.

Plaintiff was subsequently taken to the hospital for surgery. The complaint alleges that his injuries resulted in permanent nerve and other physical damage. At this point, plaintiff's medical bills have exceeded $24,000.

In July 1991, plaintiff commenced this suit by praecipe for a writ of summons in the Court of Common Pleas of Dauphin County, Pennsylvania. The complaint posed five separate causes of action, some brought pursuant to 42 U.S.C. § 1983 and some brought under common law tort theories. Plaintiff alleged: 1) that Officer Salada used excessive force in effectuating plaintiff's arrest in contravention of the fourth amendment's stricture against unreasonable searches and seizures; 2) that Salada's actions amounted to a denial of life, liberty or property in violation of the fourteenth amendment's due process clause; 3) that Salada was guilty of negligence under state tort law; 4) that the city's Bureau of Police is liable under the municipal liability doctrine for failure to train or supervise its officer in proper firearm techniques; and 5) that the city had wrongfully permitted Salada to carry a firearm when they were on notice through previous incidents that Salada was not fit to carry a firearm, as well as being vicariously liable.

Defendants removed the action to this court on January 29, 1992. Soon afterward, defendants filed this motion to dismiss.

*Discussion*

The motion attacks every count of Troublefield's pleading. The court will, accordingly, address each count in order.

## I. Fourth Amendment Claim

■ Plaintiff claims that the officer's actions in making the arrest constituted excessive force and therefore rise to the level of an unreasonable search and seizure in contravention of the fourth amendment of the United States Constitution.

In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the United States Supreme Court held that the fourth amendment and the fourth amendment only applies to excessive force cases arising from an arrest or an investigatory stop. *Graham*, 490 U.S. at 395, 109 S.Ct. at 1870–71. The Court then endorsed an objective reasonableness test in judging the behavior of the law enforcement officers in making an arrest. The inquiry is whether the officer's actions, given the perspective of a reasonable officer at the scene, was reasonable. *Id.* at 396, 109 S.Ct. at 1872. A "seizure" occurs when government actors have, "by means of physical force or show of authority, ... in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). "Whenever an officer restrains the freedom of a person to walk away, he has seized that person." *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985).

Defendant's principal argument is that, given the facts as alleged in the complaint, no seizure occurred implicating fourth amendment rights because there was no intentional act on the part of Salada which resulted in Troublefield's injury.

Plaintiff counters that fourth amendment protections under *Graham* were triggered as soon as Salada gained custody and control of him, and that, therefore, the officer's conduct must be evaluated under

the objective reasonableness test of *Graham.*

In a case announced just two months prior to *Graham, Brower v. Inyo County,* 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), the Court intimated that only intentional conduct on the part of law enforcement officials invokes the protection of the fourth amendment. *Brower* concerned a "blind" roadblock—a tractor trailer parked across a highway just around a bend—set up by police officials to stop a fleeing car thief. The thief plowed into the tractor trailer at high rate of speed and was killed. The Court reasoned that such a roadblock constituted a "seizure" of the suspect within the meaning of the fourth amendment. In coming to this conclusion, the court discussed fourth amendment jurisprudence and the limits of protection under that amendment.

The Court first opined that
> [a] [v]iolation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful. This is implicit in the word "seizure," which can hardly be applied to an unknowing act.

*Brower,* 489 U.S. at 596, 109 S.Ct. at 1381 (citations omitted). The Court continued that a "seizure" occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Id.* at 597, 109 S.Ct. at 1381 (emphasis in original). Later in the opinion, the Court again emphasized that the fourth amendment is to apply only to volitional behavior:
> In determining whether the means that terminates the freedom of movement is the very means that the government intended we cannot draw too fine a line, or we will be driven to saying that one is not seized who has been stopped by the accidental discharge of a gun with which he was meant only to be bludgeoned, or by a bullet in the heart that was meant only for the leg. We think it is enough for a seizure that a person be stopped by

the very instrumentality set in motion or put in place in order to achieve that result.

*Id.* at 598–99, 109 S.Ct. at 1382.

Since the announcement of *Brower* and *Graham,* several courts have had the opportunity to apply the analyses set forth in those two cases against the background of an accidental injury to a police suspect in the course of an arrest.

The most recent decision is found in *Glasco v. Ballard,* 768 F.Supp. 176, 179 (E.D.Va.1991). In that case, a police officer, driving along, spotted a person he suspected of shoplifting. The officer stopped his patrol car and asked the plaintiff and his companion what they had in their pockets. The plaintiff mumbled inaudibly, and the defendant officer began to step out from his car. As he did, the car began to roll forward. The defendant leaned into the car to reach the brake, but in doing so accidently caused his gun to fire, hitting the plaintiff in the neck.

The *Glasco* court, construing *Graham* and *Brower,* held that the accidental shooting did not constitute a seizure of the plaintiff and granted summary judgment. The court rejected the plaintiff's contention that the language in *Graham* which indicates that an officer's intentions, either good or evil, are irrelevant in a fourth amendment excessive force case dictated that the officer's conduct in firing the shot should be adjudged according to the "objective reasonableness" standard:
> Although persuasive when read out of context, [the *Graham* language] is less so when read in full. The plaintiff correctly understands the Supreme Court to suggest that intent is irrelevant but confuses the type of "intent" to which the Court is referring. In criminal law terms, the Court ruled that *specific intent,* or motivation, is not an element of the Fourth Amendment. It made no actual ruling on the issue of *general intent.* In other words, it is irrelevant whether the police officer intended to brutalize a suspect or merely intended to discipline him, but it is still relevant

whether the officer intended to perform the underlying violent act at all.

*Glasco,* 768 F.Supp. at 179 (emphasis in original). Therefore, according to *Glasco,* whether a law enforcement officer voluntarily chose the course of action which harmed a suspect is still relevant; whether he acted intending to harm the suspect, or merely to scare him, is not. *See also Fletcher v. Conway,* No. 89 C 5183, 1991 WL 10853, *3, 1991 U.S.Dist. LEXIS 783, *7–8 (N.D.Ill. Jan. 9, 1991) (court noted that "the threshold issue is whether a seizure has occurred.... [A]llegations that [defendant] acted recklessly or willfully fall short of establishing the intentional conduct required under *Brower* ").

The Seventh Circuit Court of Appeals in *Campbell v. White,* 916 F.2d 421 (7th Cir. 1990), *cert. denied,* — U.S. —, 111 S.Ct. 1314, 113 L.Ed.2d 248 (1991), also addressed the limits of excessive force liability after *Graham* and *Brower,* albeit in a somewhat different factual circumstance than the court is faced with here. In *Campbell,* a state trooper accidentally collided with a motorcyclist he had been chasing. Reversing a denial of summary judgment, the circuit panel made a distinction between the trooper's intentional actions in pursuing the suspect for the purpose of apprehending him and the trooper's accidental conduct in running into him. The trooper, the court reasoned, did not intend to capture the suspect through running him down with his patrol car. "The collision between White and Campbell was not *'the means intentionally applied'* to effect the stop, but was rather an unfortunate and regrettable accident. Absent a seizure, a discussion of the reasonableness of Officer White's actions would be merely academic." *Campbell,* 916 F.2d at 423. *See Apodaca v. Rio Arriba County Sheriff's Dep't,* 905 F.2d 1445, 1447 (10th Cir. 1990) (accidental collision between sheriff's deputy's automobile and plaintiff's decedent's car did not constitute a "seizure").

The First Circuit Court of Appeals has also seen this issue. Pursuing a robbery suspect, police fired in order to stop the suspect's escape and instead hit a hostage. Adjudicating whether the hostage possessed a fourth amendment claim, a First Circuit Court of Appeals panel in *Landol–Rivera v. Cruz Cosme,* 906 F.2d 791 (1st Cir.1990), addressed the issue of whether the stray bullets "seized" the plaintiff hostage. The court, citing the "intent" language from *Brower,* rejected the notion that the plaintiff had been seized because there was no intention on the part of the police to bring him within their control. "A police officer's deliberate decision to shoot at a car containing a robber and a hostage *for the purpose of stopping the robber's flight* does not result in the sort of willful detention of the hostage that the Fourth Amendment was designed to govern." *Landol–Rivera,* 906 F.2d at 791.

Several pre-*Graham* cases also are instructive on whether non-intentional conduct on the part of police implicates the fourth amendment. In *Dodd v. City of Norwich,* 827 F.2d 1 (2d Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 653 (1988), a panel of the Second Circuit Court of Appeals considered a circumstance where a burglar who, while being handcuffed, reached for the arresting officer's gun and was killed when the it accidently discharged. On rehearing, the circuit panel held that no "seizure" had occurred despite the fact that the burglar was already in custody.

It makes little sense to apply a standard of reasonableness to an accident. If such a standard were applied, it could result in a fourth amendment violation based on simple negligence. The fourth amendment, however, only protects individuals against "unreasonable" seizures, not seizures conducted in a "negligent" manner. The Supreme Court has not yet extended liability under the fourth amendment to include negligence claims. Only cases involving intentional conduct have been considered by the Supreme Court. Negligence, in fact, has been explicitly rejected as a basis for liability under the fourteenth amendment.

*Dodd,* 827 F.2d at 7–8.

A Georgia district court in *Matthews v. City of Atlanta,* 699 F.Supp. 1552, 1556–57 (N.D.Ga.1988), addressed a factual circum-

stance much like the one in the present case. A peace officer had approached two suspects sitting in a reportedly stolen truck. The officer identified himself and approached the vehicle with his revolver drawn, pointed near one of the suspect's head. As he attempted to reach into the cab and disengage the truck's engine, the truck lurched forward and the gun accidentally fired, hitting the decedent in the head. The court ruled that, as it was undisputed that the shot was fired without volition on the part of the defendant, that no seizure had taken place. *Matthews*, 699 F.Supp. at 1556–57.

Plaintiff argues that these pre-*Graham* cases are no longer good law, as *Graham* dictates that once a seizure has occurred, an official's conduct must be judged under a standard of reasonableness. The court disagrees. The intentional act is a threshold requirement of fourth amendment liability—it is only the first step. *See Fletcher v. Conway*, No. 89 C 5183, 1991 WL 10853, *3, 1991 U.S.Dist. LEXIS 783, *7–8 (N.D.Ill. Jan. 9, 1991). This was so pre-*Graham* and after *Graham*. That an officer's after-seizure conduct is judged by *Graham*'s objective reasonableness requirement or by the old *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.1973), factors does not take away from the current strength of the analysis of *Matthews* or *Dodd* as it relates to what constitutes a "seizure." [1]

Plaintiff comes forward with several cases he argues support the proposition that an officer's actions in drawing a weapon post-seizure must be measured under the *Graham* standard. Only one case is of real relevance here, and it appears to unreconcilable with the cases cited above.

The Sixth Circuit Court of Appeals in *Pleasant v. Zamieski*, 895 F.2d 272 (6th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 144, 112 L.Ed.2d 110 (1990), reviewed a jury verdict absolving a Detroit policeman of fourth amendment liability in the shooting death of a car theft suspect. The suspect had, upon being confronted by the officer, fled. The officer pursued with gun drawn. Plaintiff's decedent began to climb a fence to elude the officer, and, as the officer grabbed him from behind to pull him back to the ground, his gun accidentally fired, slaying the suspect. The *Pleasant* court saw the jury issues as two-fold: was the officer reasonable in withdrawing the gun and was his conduct reasonable when he failed to re-holster it? The court then upheld the jury's verdict. *Pleasant*, 895 F.2d at 276–77.

This court declines to follow *Pleasant*, as its discussion of excessive force requirements is troubling conclusory. In reviewing plaintiff's post-trial motions, the Sixth Circuit panel essentially assumes that plaintiff's claim presented a jury issue on objective reasonableness, without making any inquiry as to whether fourth amendment rights were implicated at all. *Pleasant* appears to ignore the strong language found in *Brower* with regard to the necessity of intentional conduct to state a fourth amendment claim even as it reviewed dicta from that decision cited by the plaintiff. [2] In addition, the *Pleasant* court appears to give the short shrift to the heavy load of case decisions holding that accidental shootings in identical circumstances did not constitute seizures. The *Pleasant* court does not identify or discuss any of these cases. One may infer that this is a result of the procedural status of the case: The plaintiff, as the appellant, framed the issues, and would not, one may assume, have brought up the issue of whether a seizure had occurred at all when the officer's con-

1. The court will discuss *infra* that Salada's initial apprehension of plaintiff and the mishap with the gun must be considered separate "seizures."

2. The *Pleasant* court did consider the *Brower* decision. However, it was in the context of plaintiff asserting that the dicta in that case regarding shooting someone when one only meant to bludgeon him required the court to find in her favor. The court found that this language had no effect on their deliberations, noting that "[t]he court did not say that the accidental discharge of a gun used as a bludgeon was an unreasonable seizure *per se*." 895 F.2d at 277. The *Pleasant* court, although citing *Brower*'s admonishment that a seizure only occurs "*through means intentionally applied*," did not discuss the import of this language. *Id.* (quoting *Brower*).

duct had already been adjudged to be a jury issue.[3]

Here, this court is faced with a situation nearly similar to those presented by the *Matthews*, *Glasco*, and *Dodd* cases. As in those cases, the suspect here had been "seized" in the sense that his freedom of movement was restricted—Troublefield was in the process of being cuffed; in *Matthews* and *Glasco* the suspects were being detained at gunpoint; in *Dodd* the burglar was being handcuffed and had, like Troublefield, apparently surrendered (the *Dodd* court noted that the plaintiff had, in effect, been already "seized"). This court is likewise persuaded that the language of *Brower v. Inyo County*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), quoted extensively above, requires that some nature of volitional act on the part of the state actor must cause the harm to plaintiff for a fourth amendment excessive force claim to sound. Negligence in pulling out a firearm or in reholstering it is not sufficient in this court's view.

Here, defendant Salada had effectively taken Troublefield into his control through a means intentionally applied—ordering him to the ground and then proceeding to handcuff him. If in performing this activity he were to, say, intentionally grind Troublefield's head into a storm drain, a reasonableness inquiry under the fourth amendment may have been appropriate. However, as Troublefield was injured by a bullet fired by accident, no fourth amendment rights have been trampled upon because Salada did not intend the bullet to bring plaintiff within his control or to, perhaps, settle him down were he struggling to break free.

In addition, the court can see no principled reason to depart from the clear holdings of these cases and the language of *Brower* to decide, as plaintiff urges, that

since plaintiff had already been "seized"—as opposed to *Landol–Rivera* and *Campbell* where the suspect was merely being pursued—all the circumstances of his arrest must be scrutinized under a "reasonableness" standard. In the court's view, such an approach is of no consequence to whether the shooting here constitutes a fourth amendment violation. The court can see no principled reason for applying what is essentially a negligence standard (i.e. "reasonableness") to an officer's conduct in a situation where a suspect is accidentally shot while in the process of being apprehended (only moments after the initial confrontation, one may surmise), but in holding that no fourth amendment "seizure" is present where an officer is chasing a suspect and his gun accidentally discharges. *See Dodd v. City of Norwich*, 827 F.2d 1, 7–8 (2d Cir.1987) (discussing place of negligence concepts in fourth amendment jurisprudence). If Salada had intended to shoot, he would have upped the ante and, in effect, brought about a second seizure of Troublefield. This is, as recognized by many of the cases discussed above, a fine distinction.

In so ruling, the court notes that, in circumstances like those in the present, § 1983 jurisprudence at times dictates harsh results. However, it is clear that not every injury born by a citizen at the hands of the government rises to the level of a constitutional violation. Such is the case here. The court will dismiss plaintiff's fourth amendment excessive force claim.

## II. Due Process Claim

■ *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989), made it clear that injuries suffered in the course of an arrest are to be adjudicated under the fourth amendment only. Plaintiff's complaint clearly outlines an injury incurred while he was being arrested.

---

**3.** The other case relied on by plaintiff, *Spera v. Lee*, 728 F.Supp. 366 (E.D.Pa.1990) is distinguishable from the present case. In *Spera*, an officer shot a building manager he had mistaken for a burglar. The officer, however, intended to shoot a figure he thought was an intruder; that that person turned out to be an innocent third party did not negate that intent. Such a

situation is distinguishable from that facing the court here, where the gun went off entirely by accident, according to plaintiff's complaint. The same is true of the pre-*Graham* Supreme Court case *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). *See Matthews v. City of Atlanta*, 699 F.Supp. 1552, 1557 (N.D.Ga.1988).

Accordingly, plaintiff has stated no claim under the fourteenth amendment's due process clause. *Accord Glasco v. Ballard,* 768 F.Supp. 176, 180 (E.D.Va.1991).

### III. Municipal Liability

 Plaintiff also asserts municipal liability against the City of Harrisburg, Bureau of Police pursuant to *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff summarizes his theories of municipal liability at page 39 of his brief:

> Here, Plaintiff has alleged that the Bureau of Police knew, prior to the shooting, that Officer Salada was not qualified to carry a firearm based on at least one prior, incident in which his weapon was discharged unexpectedly causing injury. In light of this knowledge, the Bureau of Police further failed to adequately and properly supervise and train him in the safe use of firearms, particularly in the course of making an arrest.

In *City of Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam), the United States Supreme Court held that a municipal entity cannot be held liable for failing to train or supervise an officer where there is no underlying constitutional violation by the individual officer. As the Court noted, "if a plaintiff has suffered no constitutional injury at the hands of the individual police officer, the fact that departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *Heller,* 475 U.S. at 799, 106 S.Ct. at 1573. In *Williams v. Borough of West Chester,* 891 F.2d 458 (3d Cir.1989), the Third Circuit Court of Appeals noted that where a plaintiff's claims focus on the harm due to the actions of municipal employees, rather than by harm directly traceable to a municipal policy itself, municipal liability claims must be dismissed where the individual officer is exonerated. *Williams,* 891 F.2d at 467, n. 14; *see also Simmons v. City of Philadelphia,* 947

F.2d 1042, 1063 (3d Cir.1991); *Estate of Dawson v. Williams,* No. 90–1482, 1991 WL 34304, 1991 U.S.Dist. LEXIS 2925 (E.D.Pa. March 11, 1991); *Lach v. Robb,* 679 F.Supp. 508, 512 (W.D.Pa.), *aff'd,* 857 F.2d 1464 (3d Cir.1988).

Here, the court has held that defendant Salada's conduct as described by the complaint does not state a § 1983 claim for violations of the fourth amendment. All of plaintiff's municipal liability claims are based on the police bureau's inadequate training and supervision of Officer Salada specifically, *see* Complaint ¶ 48,[4] and do not go to general departmental policies or practices. Therefore, pursuant to *Heller,* no claim exists against the Bureau of Police under theories of municipal liability. This claim must be dismissed. *See Williams; Estate of Dawson; Lach; accord Apodaca v. Rio Arriba County Sheriff's Dep't,* 905 F.2d 1445, 1447–48 (10th Cir.1990); *Dodd v. City of Norwich,* 827 F.2d 1, 8 (2d Cir. 1987); *Swink v. City of Pagedale,* 810 F.2d 791, 794–95 (8th Cir.1987); *Palmerin v. City of Riverside,* 794 F.2d 1409, 1414–15 (9th Cir.1986).

### IV. Pendent State Law Claims

As the court has dismissed all the federal claims brought by plaintiff, it no longer has jurisdiction over the pendent state law claims. *See* 28 U.S.C. § 1367(c)(3) (pendent jurisdiction should be exercised unless "the district court has dismissed all claims over which it has original jurisdiction"). This case was removed from the Court of Common Pleas of Dauphin County. The court will accordingly remand the case there for further proceedings on the state law claims.

### ORDER

In accordance with the accompanying memorandum, IT IS HEREBY ORDERED THAT:

1) Defendants' motion to dismiss is GRANTED with regard to Counts I, II, IV and V of plaintiff's complaint;

---

**4.** Plaintiff alleges that the bureau is liable under § 1983 due to vicarious liability, *see* Complaint ¶ 48(c). The Supreme Court made it clear in *Monell* that there is no such basis for municipal liability under § 1983.

2) The Clerk of Court is directed to remand this case to the Dauphin County Court of Common Pleas with regard to Count III of the complaint, which concerns state common law negligence claims.