# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 02-2941/02-2942

_____

| | | |
|---|---|---|
| Ronnie McCoy; Lori McCoy, | * | |
| | * | |
| Appellees/Cross Appellants, | * | |
| | * | |
| v. | * | Appeals from the United States |
| | * | District Court for the |
| City of Monticello; Mayor Harold | * | Eastern District of Arkansas. |
| West; Monticello Police Department; | * | |
| Police Chief Sam Norris, | * | |
| | * | |
| Defendants/Cross Appellees, | * | |
| | * | |
| Ken Ouellette, | * | |
| | * | |
| Appellant/Cross Appellee. | * | |

_____

Submitted:  March 10, 2003

Filed:  September 8, 2003

_____

Before HANSEN,[1] Chief Judge, RILEY and MELLOY, Circuit Judges.

_____

[1]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003.  He has been succeeded by the Honorable James B. Loken.

RILEY, Circuit Judge.

On December 31, 2000, Ken Ouellette (Ouellette), an auxiliary police officer with the Monticello Police Department, participated with Officer Hank Hollinger (Hollinger) in a police pursuit of a vehicle driven by Ronnie McCoy (McCoy). The pursuit ended when police forced McCoy's truck off the ice-covered road into a ditch. As Ouellette approached the vehicle with his gun drawn, he fell on the ice, his gun discharged, and a bullet struck McCoy in the chest. McCoy and his wife (collectively McCoys) sued the City of Monticello (City), its mayor, police chief, and Ouellette under 42 U.S.C. § 1983, alleging violations of McCoy's Fourth Amendment rights. The district court granted summary judgment in favor of the City, but denied Ouellette's motion for summary judgment based on qualified immunity. Ouellette appeals the denial of qualified immunity, and the McCoys cross appeal the entry of summary judgment in favor of the City. We reverse the ruling on qualified immunity, and decline to exercise jurisdiction over the cross appeal.

## I.    BACKGROUND

The McCoys celebrated New Year's Eve at the Timberline Club in Monticello, Arkansas. Shortly before midnight they left the club. Snow and sleet blanketed the area, causing slippery road conditions. McCoy's truck slid sideways as it exited the parking lot and pulled onto Highway 425. Ouellette and Hollinger observed McCoy's truck sliding sideways or fishtailing and followed the truck, activating the police cruiser's blue lights and siren.

McCoy claims he drove for a mile without incident and was unaware of the police car behind him. McCoy testified he saw a white truck pull onto the roadway. At some point, McCoy heard a siren and saw police lights. Assuming the police were pursuing the white truck, McCoy continued driving. The police car passed and pulled in front of McCoy's truck. McCoy swerved to miss the police car, and his truck landed in a ditch. McCoy exited his truck and raised his arms into the air. McCoy

2

did not have a weapon. He next observed two officers approaching him. Hollinger had fallen and was getting up. With his arms extended over his head and hands clasped, as if holding a handgun, Ouellette ran towards McCoy. When Ouellette was within a few feet of McCoy, Ouellette slipped, his gun discharged, and a bullet struck McCoy in the chest, severely injuring him. McCoy was never charged with any crime.[2]

The McCoys filed a section 1983 action against Ouellette, and municipal defendants Mayor Harold West, the Monticello Police Department, Police Chief Sam Norris, and the City. The district court granted summary judgment in favor of the municipal defendants, but denied Ouellette's motion for summary judgment based on qualified immunity. The district court found Ouellette seized McCoy, and ruled "a genuine issue of fact [existed] as to whether a reasonable officer would have known that his actions in drawing his gun were unreasonable and, therefore, unlawful under the circumstances."

Ouellette seeks an interlocutory review of the denial of his summary judgment motion, contending the district court erred because (1) Ouellette did not seize McCoy, and (2) no genuine issue of fact exists as to the reasonableness of the force used. The McCoys cross appeal, claiming the district court erred in granting summary judgment in favor of the municipal defendants.

## II.    DISCUSSION
### A.    Qualified Immunity

We review de novo a denial of qualified immunity. Holloway v. Reeves, 277 F.3d 1035, 1037 (8th Cir. 2002). Individual defendants are entitled to qualified

---

[2]Ouellette described a significantly different version of the encounter than the McCoys. For summary judgment purposes, we accept the McCoys' version.

3

immunity unless their alleged conduct violated "clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The law is clearly established if it gives the defendant official "fair warning" that his conduct violated an individual's rights when the official acted. Hope v. Pelzer, 536 U.S. 730, 739-40 (2002).

In Saucier v. Katz, 533 U.S. 194, 201 (2001), the Supreme Court framed the threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?" "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. An officer does not lose his qualified immunity because of a mistaken, yet reasonable belief, nor does an officer lose his immunity because of a reasonable mistake as to the legality of his actions. Id. at 205-06.

### 1. Seizure

To establish a violation of the Fourth Amendment in a section 1983 action, the claimant must demonstrate a seizure occurred and the seizure was unreasonable. Hawkins v. City of Farmington, 189 F.3d 695, 702 (8th Cir. 1999). A Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority. Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). Although seizure requires restraint of an individual's liberty, not every government act resulting in a restraint of an individual's liberty constitutes a seizure. See Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989). To be a violation of the

4

Fourth Amendment, the restraint in liberty must be effectuated *"through means intentionally applied."* Id. at 597; see Hawkins, 189 F.3d at 701. A Fourth Amendment "seizure" requires an intentional act by a governmental actor.[3] Brower

---

[3]The shooting was unintentional, thereby raising an interesting question of law: after an intentional Fourth Amendment seizure has occurred, does an accidental shooting implicate the Fourth Amendment? The Second Circuit has indicated the answer may be no. In Dodd v. City of Norwich, 827 F.2d 1, 7-8 (2d Cir. 1987) (on reargument), the Second Circuit explained:

> The fourth amendment . . . only protects individuals against "unreasonable" seizures, not seizures conducted in a "negligent" manner. The Supreme Court has not yet extended liability under the Fourth Amendment to include negligence claims. Only cases involving intentional conduct have been considered by the Supreme Court. Negligence, in fact, has been explicitly rejected as a basis for liability under the Fourteenth Amendment. See Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L.Ed.2d 662 (1986); Davidson v. Cannon, 474 U.S. 344, 106 S. Ct. 668, 88 L.Ed.2d 677 (1986).

See Owl v. Robertson, 79 F. Supp.2d 1104, 1114 (D. Neb. 2000) (reasoning "if the shooting was truly accidental, then there was no violation of Owl's Fourth Amendment rights since the act of drawing the weapon and the act of forcing Owl to the ground were not . . . excessive under the Fourth Amendment . . . . This is because the Fourth Amendment protects citizens against willful shootings and not accidental, but otherwise reasonable, ones."); Troublefield v. City of Harrisburg, 789 F. Supp. 160, 166 (M.D. Pa. 1992) (finding Brower "requires that some nature of volitional act on the part of the state actor must cause the harm to plaintiff for a fourth amendment excessive force claim to sound. . . . However, as Troublefield was injured by a bullet fired by accident, no fourth amendment rights have been trampled upon because [the officer] did not intend the bullet to bring plaintiff within his control or to, perhaps, settle him down were he struggling to break free."); see also Kathryn R. Urbonya, "Accidental" Shootings As Fourth Amendment Seizures, 20 Hastings Const. L. Q. 337, 363-67 (Winter 1993). Because we hold Officer Ouellette's post-seizure conduct was objectively reasonable, we need not decide this issue.

at 596-97. In <u>Brower</u>, the Supreme Court explained "the Fourth Amendment addresses 'misuse of power,' . . . not the accidental effects of otherwise lawful government conduct." <u>Id.</u> (citation omitted).

In <u>Hawkins</u>, we held a Fourth Amendment seizure occurred when a police officer moved his car onto the highway to stop a speeding motorcycle, reasoning that the police officer had accomplished the stop through means intentionally applied. <u>Id.</u> at 702. Viewing the material facts in the light most favorable to the McCoys, the district court correctly found Ouellette and Hollinger intended to stop McCoy's vehicle and to terminate McCoy's freedom of movement by a show of authority intentionally applied. Ouellette also drew his gun with the intent to cause McCoy to submit to Ouellette's authority by threat of force, thereby satisfying the "through means intentionally applied" standard. <u>Brower</u>, 489 U.S. at 597. In response to this display of force, McCoy stated he exited his truck and raised his hands above his head, thereby establishing a seizure.

## 2.    Objective Reasonableness

However, as <u>Brower</u> makes clear, a seizure, standing alone, is not sufficient for section 1983 liability. The seizure must be unreasonable. <u>Brower</u>, 489 U.S. at 599; <u>Hawkins</u>, 189 F.3d at 702. We analyze an excessive force claim under the Fourth Amendment's "objective reasonableness" standard. <u>Graham v. Connor</u>, 490 U.S. 386, 395-97 (1989). Reasonableness of a seizure is determined by the totality of the circumstances and must be judged from the viewpoint of a reasonable officer on the scene, irrespective of the officer's underlying intent or motivation. <u>Id.</u> at 396-97; <u>Hawkins</u>, 189 F.3d at 702. The reasonableness of force depends on the facts and circumstances of each case accounting for "[(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officer or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Id.</u> at 396. Whether an officer's use of force is reasonable is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision

6

of hindsight." Graham, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." Id. at 396-97.

### a. Traffic Stop

Ouellette observed McCoy's truck slide sideways or fishtail while exiting the parking lot of the Timberline Club around midnight on New Year's Eve. Although the roads had recently become slick, a reasonable officer could suspect McCoy's driving abilities were impaired due to intoxication, and could believe McCoy posed a serious and immediate danger to himself and to others. McCoy testified he was not aware he was being pursued and assumed the police were pursuing a white truck. The police pursuit of McCoy's truck continued for at least a mile. A reasonable officer could believe the McCoys were actively fleeing to resist arrest. Under these circumstances, the police had probable cause to stop McCoy's truck. The intentional act of stopping McCoy's truck constituted a seizure and was, under the totality of the circumstances, objectively reasonable.

### b. Display of Force

The problem here occurred when Ouellette drew, but did not cock, his gun and hurried down the slippery terrain toward McCoy's truck in the ditch. Within a few feet of approaching McCoy, Ouellette apparently slipped on the ice, and his gun discharged accidentally, seriously injuring McCoy. Thus, the relevant inquiry is not whether Ouellette's act of firing his gun was "objectively reasonable," but whether, under the totality of the circumstances, his act of drawing his gun was "objectively reasonable."

Ouellette and Hollinger observed McCoy's truck leaving a night club on New Year's Eve near midnight. The officers next saw McCoy's truck sliding sideways or fishtailing on a road surface covered with recent snow and sleet. The officers

7

activated their vehicle's flashing blue lights and siren. McCoy did not pull over. Ouellette and Hollinger actively pursued McCoy for a mile or more before the officers passed and pulled in front of McCoy. McCoy's truck swerved off the road and slid backwards into a ditch. The officers had reason to believe McCoy was driving while intoxicated and was attempting to avoid arrest for that reason, or for some other illegal purpose.

In opposing summary judgment, McCoy argued the City had a custom or regular police practice of officers drawing their firearms when approaching a felony stop, which included a traffic stop of a driver who has fled. Hollinger testified that, as he exited the police cruiser, he drew his firearm and pointed it at McCoy's truck. The McCoys' evidence does not indicate whether the officers saw, or could have seen, McCoy exit his truck in the ditch, at night, with his hands above his head. The McCoys' evidence also does not show whether Ouellette saw, or was in a position where he could have seen, Hollinger slip and fall on the ice, or whether Ouellette was otherwise on notice of the treacherous footing.

Based on the totality of circumstances, and viewing the summary judgment facts in a light most favorable to the McCoys, we conclude a jury could not properly find Ouellette's act of drawing his gun was objectively unreasonable, entitling Ouellette to qualified immunity. Any other interpretation of this record is gleaned from 20/20 hindsight as opposed to judging the circumstances from the perspective of a reasonable officer following customary police practices. See Graham, 490 U.S. at 396.

## B. Cross Appeal

The McCoys cross appeal the district court's grant of summary judgment in favor of the municipal defendants on claims alleging (1) a failure to train properly, and (2) an unconstitutional practice or custom regarding an officer's use of a firearm incidental to traffic stops. The district court did not enter its order pursuant to Federal

Rule of Civil Procedure 54(b), which would make the order final for the purpose of appeal under 28 U.S.C. § 1291. See Mettler v. Whitledge, 165 F.3d 1197, 1202 (8th Cir. 1999). To entertain this cross appeal would require us to exercise pendent appellate jurisdiction. Kincade v. City of Blue Springs, 64 F.3d 389, 394 (8th Cir. 1995).

Pendent appellate jurisdiction is appropriate "where [an] otherwise nonappealable decision is 'inextricably intertwined' with the appealable decision, or where review of the nonappealable decision is 'necessary to ensure meaningful review' of the appealable one." Id. (quoting Moore v. City of Wynnewood, 57 F.3d 924, 930 (10th Cir. 1995)). A claim is inextricably intertwined "when the appellate resolution of the collateral appeal necessarily resolves the pendent claim as well." Id. (quoting Moore, 57 F.3d at 930). The factual issues involved in the municipal claims are separate and distinct from those involved in the qualified immunity defense. We decline to exercise pendent appellate jurisdiction.

## III. CONCLUSION

For the foregoing reasons, we reverse the district court's denial of qualified immunity and dismiss the cross appeal for lack of jurisdiction.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.